STATE OF HAWAII, Plaintiff-Appellee, *v.* RUSSELL A. HUELSMAN, also known as Russell Apo Huelsman, Defendant-Appellant

NO. 6219

DECEMBER 13, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

This case is before us for the second time, on appeal from judgments and extended term sentences entered in four separate criminal cases, identified in the records of the First Circuit Court as Cr. Nos. 46516, 46518, 46527 and 46762. Appellant pleaded guilty to certain of the charges in each of these cases, in accordance with a plea bargain which resulted in dismissal of other pending charges. Upon his guilty plea, appellant was adjudged guilty of robbery in the second degree, a class B felony, in Cr. No. 46516 and Cr. No. 46518; of kidnapping, a class B felony, in Cr. No. 46762; and of kidnapping, a class A felony, and assault in the first degree, a class B felony, in Cr. No. 46527.[1] Appellant was sentenced to the extended term of imprisonment provided by HRS § 706-661 for each of these offenses; *i.e.*, life for the class A felony and 20 years for each of the class B felonies, the sentences to run concurrently.

In the first appeal, *State v. Huelsman*, 56 Haw. 640, 548 P.2d 639 (1976), the sentences were vacated and the cases were remanded for further proceedings not inconsistent with our holdings in *State v. Kamae*, 56 Haw. 628, 548 P.2d 632 (1976). Upon remand, a consolidated hearing was held in these four cases pursuant to HRS § 706-664 and the same extended terms of imprisonment were again imposed. On this appeal, appellant asserts that HRS § 706-662(4), pursuant to which the extended term sentences were imposed, is unconstitutionally vague and uncertain on its face, that the hearing was not conducted in accordance with the standards prescribed in *Kamae* and that the imposition of extended term sentences was an abuse of discretion on the part of the trial

---

[1] Four charges of robbery in Cr. No. 46516, Cr. No. 46518, and Cr. No. 46527, and charges of rape in Cr. No. 46762 and Cr. No. 46527 were dismissed.

court. We conclude that § 706-662(4), by its terms, purports to confer upon the sentencing court authority to engage in arbitrary and discriminatory selection of sentences in violation of the due process guarantee of the Hawaii Constitution. We therefore find it necessary to limit the discretion so conferred to cases in which the sentencing court determines that the commitment of the defendant for an extended term is necessary for protection of the public. Although § 706-662(4), as so construed, meets the standards of specificity applicable to a sentencing statute, we find it necessary to again vacate the sentences and to remand the case for resentencing in the light of this opinion.

I.

The extended terms were imposed in these cases upon the ground specified in HRS § 706-662(4),[2] which requires a finding that "the defendant is a multiple offender whose

---

[2] HRS § 706-662 reads in full as follows:

§ 706-662 Criteria for sentence of extended term of imprisonment for felony.

The court may sentence a person who has been convicted of a felony to an extended term of imprisonment if it finds one or more of the grounds specified in this section. The finding of the court shall be incorporated in the record.

(1) Persistent offender. The defendant is a persistent offender whose commitment for an extended term is necessary for protection of the public. The court shall not make such a finding unless the defendant is twenty-two years of age or older and has previously been convicted of two felonies committed at different times when he was eighteen years of age or older.

(2) Professional criminal. The defendant is a professional criminal whose commitment for an extended term is necessary for protection of the public. The court shall not make such a finding unless the defendant is twenty-two years of age or older and:

(a) The circumstances of the crime show that the defendant has knowingly devoted himself to criminal activity as a major source of livelihood; or

(b) The defendant has substantial income or resources not explained to be derived from a source other than criminal activity.

(3) Dangerous person. The defendant is a dangerous person whose commitment for an extended term is necessary for protection of the public. The court shall not make such a finding unless the defendant has been subjected to a psychiatric examination resulting in the conclusion that his criminal conduct has been characterized by compulsive, aggressive behavior with heedless indifference to consequences, and that such condition makes him a serious danger to others.

criminality was so extensive that a sentence of imprisonment
for an extended term is warranted'', and further provides by
subparagraphs (a) and (b) that such a finding shall not be
made by the court unless the defendant is being sentenced for
two or more felonies or is already under sentence of impris-
onment for felony, and unless the maximum terms of impris-
onment authorized for each of the defendant's crimes if made
to run consecutively would equal or exceed the maximum of
the extended term imposed or would equal or exceed forty
years if the extended term imposed is for a class A felony.
There is no dispute that the subsidiary conditions of HRS §§
706-662(4)(a) and (b) are satisfied by the record. However, the
evidence offered by the prosecution to show that appellant's
"criminality was so extensive that a sentence of imprison-
ment for an extended term is warranted"consisted solely of
the testimony of six investigating police officers, only one of
whom had observed any conduct of appellant. In Cr. No.
46762, the sole testimony offered with respect to the kidnap-
ping was to the effect that a police officer found appellant in a
car with the victim of the kidnapping in a position that
suggested that appellant was engaged in sexual intercourse,
and that the victim called for help when the officer was

---

(4) Multiple offender. The defendant is a multiple offender whose criminality
was so extensive that a sentence of imprisonment for an extended term is
warranted. The court shall not make such a finding unless:

    (a) the defendant is being sentenced for two or more felonies or is already
under sentence of imprisonment for felony; or

    (b) the maximum terms of imprisonment authorized for each of the defen-
dant's crimes, if made to run consecutively would equal or exceed in length
the maximum of the extended term imposed, or would equal or exceed forty
years if the extended term imposed is for a class A felony.

(5) Offender against elderly or handicapped. The defendant is an offender
against the elderly or handicapped whose commitment for an extended term is
necessary for the protection of the public. The court shall not make such a finding
unless:

    (a) the defendant inflicts serious bodily injury upon a person who is 60
years of age or older; or against a person who is blind, a paraplegic, or a
quadraplegic; and

    (b) such disability is known or reasonably should be known to the defen-
dant; and

    (c) the defendant attempts or commits any of the following crimes: mur-
der, rape, robbery, felonious assault, burglary and kidnapping.

observed. In Cr. No. 46527, an officer testified that the victim had black eyes and bruises on her face when interviewed and that her male companion had been robbed of his wallet. In Cr. No. 46518, another officer testified that he interviewed the two robbery victims and later signed a complaint alleging that a knife was used in the robbery.

In announcing his findings at the conclusion of the hearing, the sentencing judge stated that he was aware only of the facts which came to him in court hearings and in the presentence report. The other hearings to which the court apparently referred were a hearing in which appellant changed his plea, a hearing on a motion for withdrawal of plea and the first extended term hearing. At the last-mentioned hearing, prior to the first appeal of these cases, the sentencing judge outlined his understanding from the presentence report (not included in the record before us) with respect to the incidents out of which the four cases arose, describing in considerable detail the conduct of appellant on each occasion. At the second extended term hearing, with which we are now concerned, the judge did not provide any statement of the facts upon which he relied, and provided only a conclusory finding, in each case, that "the evidence shows beyond a reasonable doubt that the defendant is a multiple offender whose criminality is so extensive that a sentence of imprisonment for an extended term is warranted as required under Section 662(4) of the Hawaii Penal Code."

II.

The Hawaii Penal Code, which became effective January 1, 1973, attempted to ameliorate former discrepancies in sentences by providing only one possible maximum length of imprisonment for each class of felony, except for those involving special problems calling for extended terms of incarceration. HRS § 706-660 mandates the imposition of indeterminate maximum terms of imprisonment with the minimum length of each term to be determined by the board of paroles and pardons. For a class A felony the mimimum term is 20

years; for a class B felony, 10 years; and for a class C felony, 5 years. By HRS § 706-661 it is provided that, in cases designated in HRS § 706-662, a person convicted of a felony may be sentenced to an extended indeterminate term of imprisonment, which for a class A felony shall be life; for a class B felony, 20 years; and for a class C felony, 10 years. HRS § 706-662, at all times relevant to this case, specified four classes of offenders who were subject to extended terms of imprisonment. A fifth class was added by the 1978 legislature to deal with offenders against the elderly or handicapped.

Each of the subsections of § 706-662 requires the trial court to engage in a two-step process to impose a sentence for an extended term. The first step involves a finding by the court that the defendant is within the class of offenders to which the particular subsection applies. Thus subsection (1) requires a finding that the defendant is a persistent offender, which finding shall not be made unless the defendant is at least 22 years of age and has previously been convicted of two felonies committed at different times when he was at least 18 years of age. Subsection (2) requires a finding that the defendant is a professional criminal, which finding shall not be made unless the defendant is at least 22 years of age and certain facts are shown by the circumstances of the crime or otherwise appear. Subsection (3) requires a finding that the defendant is a dangerous person, which finding may not be made without a psychiatric examination. Subsection (4) requires a finding that the defendant is a multiple offender, which finding may not be made unless the defendant is being sentenced for two or more felonies or is under sentence for a felony and the maximum terms of imprisonment authorized for the defendant's crimes meet certain requisites. Subsection (5), added in 1978, similarly requires a finding that the defendant is an offender against the elderly or handicapped, which finding may not be made unless the defendant inflicts serious bodily injury upon a person who is 60 years of age or older or who suffers from specified handicaps, whose disability is known or should have been known to the defendant, and the defendant attempts or commits a specified crime.

After the first step of this process has been completed and the defendant has been found by the court to be within the class of offenders specified by the particular subsection, the court must determine, under subsections (1), (2), (3) and (5), that the defendant's commitment for an extended term is necessary for the protection of the public. The corresponding requirement in subsection (4) is phrased somewhat differently as calling for a finding that the defendant's "criminality was so extensive that a sentence of imprisonment for an extended term is warranted."

HRS § 706-664 requires a hearing on notice to the defendant as a prerequisite to imposition of a sentence of imprisonment for an extended term. The applicability of the constitutional guarantee of due process to such a hearing was considered by this court in *State v. Kamae*, 56 Haw. 628, 548 P.2d 632 (1976), which was an appeal from an extended term sentence imposed under § 706-662(4). The critical question in *Kamae*, upon which the decision turned, involved the adequacy of the proof of the defendant's prior convictions for the purpose of satisfying the first step of the two-step process which we have outlined above. This proof consisted solely of hearsay statements in a presentence report. We held that the ordinary rules of evidence apply to the proof of such facts in an extended term sentence hearing and that the presentence report, in the absence of a stipulation, was not competent evidence of the prior convictions. In language not necessary to the decision, we went on to say in *Kamae* that the facts required to be determined in the second step, as well as those required in the first step of the process mandated by § 662, must be established by proof beyond a reasonable doubt and subject to the ordinary rules of evidence. We imperfectly analogized the entire proceeding, rather than only the first step in the process, to the proceeding under the Colorado Sex Offenders Act dealt with in *Specht v. Patterson*, 386 U.S. 605 (1967). Accordingly, we said (quoting from *Specht*) that the defendant is entitled in such a proceeding "to the full panoply of relevant protections which due process guarantees in state criminal proceedings." 56 Haw. at 636, 548 P.2d at 637.

A closer analogy exists in the 1970 Omnibus Crime Control Act, by which Congress provided for the sentencing of dangerous special offenders to extended terms of imprisonment. Special offender status is determined under 18 USC § 3575(e), which establishes categories based on the defendant's prior record of convictions or prior criminal conduct and is not relevant here. In addition to finding that the defendant is a special offender, the court must find that the defendant is also a dangerous offender. Section 3575(f) provides:

A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant.

Section 3575 expressly entitles the defendant to notice and hearing, assistance of counsel, compulsory process and cross-examination of such witnesses as appear at the hearing. The finding that a defendant is a dangerous special offender is to be made upon a preponderance of the information before the court, including so much of the presentence report as the court relies upon.

The federal Circuit Courts of Appeal appear uniformly to have sustained this statute against attacks based upon *Specht v. Patterson, supra. United States v. Stewart*, 531 F.2d 326 (6th Cir. 1976), *cert. denied*, 426 U.S. 922 (1976); *United States v. Ilacqua*, 562 F.2d 399 (6th Cir. 1977), *cert. denied*, 98 S. Ct. 1453 (1978); *United States v. Warme*, 572 F.2d 57 (2d Cir. 1978), *cert. denied*, 435 U.S. 1011 (1978); *United States v. Neary*, 552 F.2d 1184 (7th Cir. 1977), *cert. denied*, 434 U.S. 864 (1977); *United States v. Bowdach*, 561 F.2d 1160 (5th Cir. 1977); *United States v. Williamson*, 567 F.2d 610 (4th Cir. 1977). In both *United States v. Neary, supra,* and *United States v. Williamson, supra,* the process by which a special offender is determined to be dangerous was analogized to ordinary sentencing, in which the court is not restricted to information received in open court, under the rule of *Williams v. New York*, 337 U.S. 241 (1949). Only in *United States v. Duardi*, 384 F. Supp. 874 (D.C. Mo. 1974), *aff'd on other grounds*, 529 F.2d 123 (1975), has the dangerous special of-

fender statute been viewed as failing to withstand application of the *Specht* standards.

The holdings of *Neary* and *Williamson,* that the determination that a special offender is dangerous is subject only to the due process requirements of ordinary sentencing, are directly parallel to our holding in *State v. Nobriga,* 56 Haw. 75, 527 P.2d 1269 (1974). There we dealt with the discretion granted to a sentencing judge by HRS § 706-667 to reduce the statutory sentence of a young adult defendant to a special maximum term of four years, "if the court is of the opinion that such special term is adequate for his correction and rehabilitation and will not jeopardize the protection of the public." In *Kamae,* while concluding that a proceeding under HRS § 706-662(4) is of a somewhat different character, we expressly reaffirmed our conclusion in *Nobriga* that the ordinary sentencing determination there considered did not involve a separate criminal proceeding and was not subject to the *Specht* standards.

Recognition that extended term sentencing is a two-step process enables us to apply *Kamae* and *Nobriga* appropriately in the stages of the proceeding to which they are relevant. The determination that the defendant is a member of the class of offenders to which the particular subsection of § 662 applies involves "historical facts", the proof of which exposes the defendant to punishment by an extended term sentence, similarly to the manner in which the proof of his guilt exposes him to ordinary sentencing. For the reasons which we stated in *Kamae,* the procedural standards laid down in that case apply to that phase of a § 664 hearing in which proof is made that the defendant is a persistent offender, a professional criminal, a dangerous person, a multiple offender or an offender against the elderly or handicapped. But when the status of the defendant has been established, the process by which the court determines that the defendant's commitment for an extended term is necessary for the protection of the public, or in the case of § 662(4) that the defendant's criminality was so extensive that a sentence of imprisonment for an extended term is "warranted", is one which deals with the subject

matter of ordinary sentencing. As was said in *United States v. Neary, supra,* with respect to the determination that a defendant is "dangerous" for the purposes of the dangerous special offender statute after a finding has been made that the defendant is a "special offender": "The [finding of dangerousness] essentially involves both evaluation of the character of the defendant and a prediction of future conduct, matters which are traditionally left to wide discretion of a sentencing court." 552 F.2d at 1193. The procedural standards to which the second phase of an extended term sentence proceeding should be subject are those applicable to ordinary sentencing.

Accordingly, we proceed with our consideration of the sufficiency of the sentencing standard expressed in § 662(4) upon the premise that the relevant criteria are those which we found applicable in *Nobriga* rather than in *Kamae.*[3] Since only the sufficiency of the sentencing standard has been challenged, we do not have occasion to consider in this case whether the procedural requirements of HRS § 706-664 provide due process.

### III.

Appellant attacks § 662(4) as unconstitutionally vague and uncertain on its face. We are presented with the question whether due process is denied to a defendant who is committed for an extended term because the sentencing court considers his criminality so extensive that an extended term is warranted. In the absence of judicial limitation of the discretion purportedly conferred by § 662(4), it is apparent that the

---

[3] This conclusion is in accordance with the American Bar Association Standards Relating to Sentencing Alternatives and Procedures. The commentary to § 5.5(c) of the Standards says that "the Advisory Committee fails to see why the method of the criminal law as employed at trial must be carried over into the sentencing phase [with respect to enhanced punishment on the basis of character factors], or if it must, why the procedure for sentencing repeat or dangerous offenders is the only case where this must be so." The Advisory Committee also argues that the provision of statutory standards to guide such a sentencing decision should not necessitate a more formal procedure and that *Specht* does not require that result. *Nobriga* evidences our agreement with this analysis.

length of a defendant's sentence may depend solely upon the judgment of a particular judge with respect to the degree of punishment which society should impose upon a particular defendant in retribution for his offenses. Section 662(4), as the only subsection of § 662 which does not expressly place the commitment of the defendant for an extended term upon the criterion of need for protection of the public, purports to grant discretion to extend the sentence without regard to that need and the related considerations of the defendant's potential, or lack of potential, for rehabilitation. We must consider whether wholly unfettered discretion to impose an extended term sentence upon purely retributive considerations can constitutionally be conferred upon the sentencing court.[4]

It is axiomatic that a criminal statute, to provide the due process protections mandated by the fourteenth amendment of the United States Constitution and article I, § 4 of the Hawaii State Constitution, must prescribe a fixed standard by which guilt may be adjudged free from "the whim or caprice of . . . the judge or the jury." *State v. Kimball*, 54 Haw. 83, 88, 503 P.2d 176, 179 (1972). In *State v. Grahovac*, 52 Haw. 527, 535, 480 P.2d 148 (1971), we held to be fatally vague and uncertain a statute which imposed sanctions against one who "wanders about the streets at late or unusual hours of the

---

[4] Criminal sanctions have been said to be divided into the broad classifications of punishment and treatment. In this analysis, the appropriateness of punishment is measured by the offending conduct, while the appropriateness of treatment is determined by the character of the offender. See Packer, The Limits of the Criminal Sanction, 25-6 (1968). Treatment includes, of course, the confinement of the offender while he is believed to remain a threat to society and until he is believed to have been rehabilitated. Criminality is a quality which exists solely by reason of the offending conduct and the resultant state of being guilty of crime. When the appropriateness of a sentence is measured by the offender's criminality it is necessarily measured by the offending conduct, and the sentence is imposed as punishment for engaging in that conduct. Punishment may be inflicted either or both to impose that penalty which past conduct is thought to deserve or, by threatening a similar penalty, to prevent the offender and others from engaging in similar conduct in the future. The first purpose is sometimes termed retributive and the second preventive. But since the sentence which serves the first purpose is retributive by definition, and it is the threat of such a sentence which serves the second purpose, the measure of the appropriate sentence for either purpose is the degree of retribution which society considers appropriate to expiate the crime.

night, without any visible or lawful business." The word "wanders", we said, was a definitional mystery in this context and "late or unusual hours" depended totally upon personal fancy. In *State v. Abellano*, 50 Haw. 384, 441 P.2d 333 (1968), an ordinance making it unlawful to be "present at" a cockfight was held to be unconstitutionally vague. The United States Supreme Court has held, in *Hynes v. Mayor of Oradell*, 425 U.S. 610 (1976), that an ordinance which dealt with soliciting for a "recognized charitable cause" was invalid because of vagueness, in that "men of common intelligence must necessarily guess at its meaning." We could not avoid holding unconstitutionally vague a statute which authorized the arrest, conviction and punishment of a person on the sole criterion that he was considered by the arresting officer, prosecutor and judge to be engaged in conduct which warranted punishment. *Cf. Giaccio v. Pennsylvania*, 382 U.S. 399 (1966).

We face a different question when we consider whether the same need of specificity applies to the criteria upon which an extended term sentence may be imposed. We pointed out in *State v. Manzo*, 58 Haw. 440, 573 P.2d 945 (1977), that vagueness in criminal laws offends several important values by depriving offenders of fair warning, permitting arbitrary and discriminatory application and, where first amendment freedoms are involved, inhibiting the exercise of those freedoms. We are concerned here with only the avoidance of arbitrary or discriminatory application of the criminal laws. We are not aware of any support for the proposition that fairness in the disposition of criminal defendants requires that they know the punishment they will receive if they commit offenses they know to be penal. Where an offender has received fair warning that his conduct may be adjudged to be criminal and punishable, he is not entitled to advance notification of the sentence which will be imposed within the range permitted by statute. "Before making the sentencing determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Grayson*, 438 U.S. 41, 50 (1978).

We set to one side the question of the specificity required in the definition of those sentencing criteria which are, under *Kamae*, the subject of a specific charge to be proved in a separate proceeding. The interrelation between the standard of specificity in the charge to be proved and the standard of specificity in the statutory sentencing criterion is apparent. But a different standard of specificity is applicable where the statute defines only the sentence which the court is authorized to impose in the ordinary sentencing process. The value which the guarantee of due process protects in that instance is the avoidance of arbitrary and discriminatory application of the criminal sanction. It is clear that due process permits the court to exercise a wide discretion in selecting the appropriate sentence.

Except in the imposition of the death penalty, the United States Supreme Court has not seen a constitutional defect in standardless sentencing discretion and the Court has rejected the argument that the exercise of such discretion, even in imposing the death penalty, violates due process. In *McGautha v. California*, 402 U.S. 183 (1971), the defendant was sentenced to death under a state law which left the decision whether the defendant should live or die to the absolute discretion of the jury. The specific question before the Court was whether the defendant's constitutional rights were infringed by permitting the jury to impose the death penalty without any governing standards. The court considered only the fourteenth amendment guarantee of due process of law. After a historical review and reference to academic and professional advocacy of sentencing standards, the majority opinion notes that challenges to standardless jury sentencing had been presented to many state and federal courts and that no court had held the challenge good. It concludes: "In light of history, experience, and the present limitations of human knowledge, we find it quite impossible to say that committing to the untrammeled discretion of the jury the power to pronounce life or death in capital cases is offensive to anything in the Constitution." 402 U.S. at 207. In *Chaffin v. Stynchcombe*, 412 U.S. 17, 21 (1973), it is said: "While much has been written on the questions whether jury

sentencing is desirable and whether it is compatible with the modern philosophy of criminal sentencing that 'the punishment should fit the offender and not merely the crime,' *Williams v. New York*, 337 U.S. 241, 247 (1949), this Court has never expressed doubt about the constitutionality of that practice." And in *Lockett v. Ohio*, ——— U.S. ——— (July 3, 1978), a plurality of the Court reaffirmed that "legislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury in noncapital cases." ——— U.S. at ———.[5]

The decisions of this court have not dealt directly with sentencing standards, although *Kamae* indicates support for wide discretion in ordinary sentencing. In *Nobriga*, although no constitutional challenge was made to the sentencing standard, we dealt with a statute which placed in the judge discretion to determine that a special term of imprisonment of the defendant "is adequate for his correction and rehabilitation and will not jeopardize the protection of the public." We perceive a real though ill-defined distinction between what takes place when a sentencing judge determines which sentence will best suit the goals of reformation and rehabilitation of the defendant in light of his history and the personal characteristics evidenced by his conduct, and what takes place when the sentencing judge determines which sentence will impose the penalty which society should demand of him appropriately to expiate his crime. In the first situation, at least in theory, there is an ideal result which the perfect judge might achieve by correctly balancing all of the factors.[6] Truly

---

[5] In *Lockett v. Ohio, supra*, it was held that individualized consideration of mitigating factors in the imposition of the death penalty is required by both the eighth and the fourteenth amendments. The Court's extension of the fourteenth amendment standards to the criteria under which a sentencing authority determines whether a death sentence is to be imposed is consistent with our conclusion in the present case, despite the continued refusal of the Court to recognize that the fourteenth amendment has similar applicability in noncapital cases. Justice White, in his dissenting opinion, interprets the plurality opinion as holding "that the sentencer may constitutionally impose the death penalty only as an exercise of his unguided discretion." *Id.* at ———. We do not agree that it is necessary to read this result into the plurality opinion.

[6] The current controversy over the merits of the indeterminate sentencing concept has placed in question the efficiency of indeterminate sentencing practices and

capricious exercise of the sentencing judge's discretion cannot occur so long as the judge proceeds correctly, although judges may differ in the sentences they impose. "No rule of law, even one garbed in constitutional terms, can prevent improper use [of the information considered by the judge.] The integrity of the judges, and their fidelity to their oaths of office, necessarily provide the only, and in our view adequate, assurance against that." *United States v. Grayson, supra* at 54. But if the sentencing discretion has no guide other than the sentencing judge's sense of just retribution for the defendant's crime, differences between sentences imposed by the same judge or between sentences imposed by different judges are attributable to individual subjective value judgments. The objective criteria which are inherent in the process which governs the sentencing judge's decision in the first situation are not inherent in the second, and the process will lack any safeguard against purely arbitrary and discriminatory sentence selection.

To say that the discretion of a sentencing judge may be exercised in a purely arbitrary fashion does violence to the concept of fairness embodied in due process. The sentencing process may be largely outside the scope of the procedural guarantees which surround the determination of guilt, not because an arbitrary or capricious judgment is somehow reconciled with due process, but because such procedural limitations are viewed as inconsistent with achievement of an individualized sentence. The rationale of *Williams* subordinates the interest of the defendant in a structured procedure to the interest of the state in a sentence fitted to the personal characteristics of the defendant. "Since *Williams v. New York,* a fundamental assumption of the law of sentencing has been that the rehabilitative purposes of modern correctional philosophy justify a relaxation of the procedural formalities

---

has led a number of states to exert more legislative control over sentences. "[T]he optimistic predictions of earlier years on the efficacy of rehabilitation are undergoing reappraisal." *United States v. Grayson, supra,* n. 7. But we are not concerned here with the selection of legislative policy. *See generally,* Zalman, The Rise and Fall of the Indeterminate Sentence, 24 Wayne L. Rev. 45 (1977), 24 Wayne L. Rev. 857 (1978).

that surround virtually every other form of judicial proceeding." Coffee, The Future of Sentencing Reform: Emerging Legal Issues in the Individualization of Justice, 73 Mich. L. Rev. 1361, 1440 (1975). Where the sentencing judge is engaged in the process of evaluating the defendant's potential for rehabilitation and of seeking an appropriate accommodation between the sentencing objectives of treatment and restraint, it is possible to view the discretion of the judge as limited to the good faith pursuit of that goal and as neither arbitrary nor capricious.

It is otherwise when the sentence is purely retributive and all consideration of rehabilitation has been rejected, as in the case of a death sentence. In *Gregg v. Georgia*, 428 U.S. 153 (1976), the plurality opinion justifies the imposition of a death penalty by reference to its principal social purposes: retribution and deterrence. Because of the uniqueness of the death penalty, the Court recognized that it could not be imposed "under sentencing procedures that created a substantial risk that it would be imposed in an arbitrary and capricious manner." 428 U.S. at 188. In *Gregg*, in *Proffitt v. Florida*, 428 U.S. 242 (1976) and in *Jurek v. Texas*, 428 U.S. 262 (1976) the Court examined death sentencing procedures and found that they adequately avoided arbitrariness and caprice. In *Woodson v. North Carolina*, 428 U.S. 280 (1976) and *Roberts v. Louisiana*, 428 U.S. 325 (1976), mandatory death sentences were reversed for causes which included both the lack of statutory standards to safeguard against arbitrary and capricious selection by juries of verdicts which required imposition of the death sentence and also the lack of meaningful appellate review of such sentences.

In the death penalty cases, the Court invoked the eighth amendment proscription of cruel and unusual punishment to place constraints upon sentencing discretion. While a majority of the Court accepted the death penalty as a permissible extreme sanction, not invariably disproportionate to the crime, a majority could not be assembled to support a death penalty which had been imposed by a jury under a procedure which permitted arbitrary or capricious selection among defendants. In the view of a majority of the Court, a death

penalty so imposed constitutes cruel and unusual punishment prohibited by the eighth amendment.

An extended term sentence under § 706-662(4) cannot be characterized as cruel and unusual punishment under the rationale of the death penalty cases regardless of any lack of guidance of the sentencing judge's discretion. We are concerned here only with what process a defendant is due under the Due Process Clause. But from the viewpoint of the defendant, the interest in non-arbitrary and non-capricious sentencing in the present case differs from that in death penalty cases only in degree.[7] Nevertheless, since we are concerned only with the Due Process Clause, *McGautha* remains a barrier to the invocation of the fourteenth amendment in the case before us.

How long-lived a barrier *McGautha* will prove to be, notwithstanding its reaffirmation as recently as by the plurality opinion in *Lockett v. Ohio, supra,* may be questioned in light of the progressive extension of due process protections to all aspects of dealing with convicted defendants. A plurality of the Court has declared that the sentencing process must satisfy the requirements of the Due Process Clause. *Gardner v. Florida,* 430 U.S. 349, 358 (1977). Due process protections also apply to dispositions of prisoners that affect residual liberty interests which have not been extinguished. *Meachum v. Fano,* 427 U.S. 215 (1976). For example, the minimum requirements of procedural due process appropriate for the circumstances have been held applicable to a proceeding for the cancellation of a prisoner's good-time credits. *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* by inquiring into the standards which governed the decisions of the Adjustment Committee which exercised the power to revoke good-time credits, and by determining that the committee did not

---

[7] "[R]ecognizing the need for sentencing standards in capital cases *must* imply a similar, if less pressing, need in noncapital cases." Pugh and Carver, Due Process and Sentencing, 49 Tex. L. Rev. 25, 47 (1970); "[T]he death penalty is indeed unique in degree and irreversibility. Apart from this obvious qualitative difference, however, there is no logical or practical reason why the procedural safeguards approved in *Gregg* should apply only to capital sentencing." Edmunds, Disparity and Discretion in Sentencing: A Proposal for Uniformity, 25 U.C.L.A. L. Rev. 323, 353 (1977).

"present(s) such a hazard of arbitrary decisionmaking that it should be held violative of due process of law", the Court strongly implied that even minimum due process requirements include standards to govern decisions affecting a prisoner's liberty. Earlier, the Court extended due process protection to the revocation of parole, *Morrissey v. Brewer*, 408 U.S. 471 (1972), and to the revocation of probation, *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). The Court has several times granted certiorari to decide whether any constitutionally mandated procedural safeguards apply to parole release hearings, only to find that the case had become moot before decision. See *Scott v. Kentucky Parole Board*, 429 U.S. 60 (1976). It has been suggested in commentary that the same logic which requires that standards be provided to remove the threat of capricious capital sentencing may be applied to sentencing in general through the extension of due process requirements. Note, Gardner v. Florida: The Application of Due Process to Sentencing Procedures, 63 Va. L. Rev. 1281 (1977).

Article I, § 4 of the Hawaii State Constitution guarantees against deprivation of liberty without due process of law. The protection afforded by this section is not necessarily limited to that provided by the fourteenth amendment. *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971). It is especially appropriate for us to give independent consideration to the scope of due process protection under the state constitution . where the authority of interpretations of the fourteenth amendment by the United States Supreme Court is suspect. In this inquiry, we are guided by the principle that "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, *supra* at 558.

We accept the logic of the death penalty cases that unguided sentencing discretion exposes a convicted defendant to arbitrary and capricious government action. We consider it beyond argument, and in any event we have so held in *Kamae*, that due process protections extend to the procedure by which it is determined whether a convicted defendant shall receive an ordinary or an extended sentence under § 706-

662(4). What process is due to the defendant may be determined only upon a balancing of the interests of the defendant and the state, but the state does not have an interest in sentencing the defendant without any guarantees whatever against arbitrary and capricious action by the state's agent. *Cf. Morrissey v. Brewer, supra.* Where the sentencing process involves an inquiry into the defendant's character in order to arrive at a sentence which gives appropriate recognition to his potential for rehabilitation and his threat to society, the statement of these criteria provides a sufficient safeguard against arbitrary or capricious action by the sentencing judge. A sentence imposed in the absence of such minimum safeguards against arbitrary and capricious selection of sentences would, in our opinion, deprive the defendant of the due process guaranteed by the state constitution.

We conclude, therefore, that if the discretion which § 706-662(4) purports to confer upon the sentencing judge to choose the sentence which provides the most appropriate expiation of the defendant's guilt is wholly unguided, § 706-662(4) fails to provide any safeguard whatever against arbitrary and capricious action by the sentencing judge and fails to provide due process.

## IV.

There remains for consideration whether the deficiency in § 706-662(4) may be remedied by judicial construction. There is some indication in the drafting history of § 706-662 that all of the subsections were assumed to contain the criterion of *necessity for protection of the public* which is spelled out in §§ 706-662(1), (2) and (3).[8] But the commentary is not evidence of

---

[8] HRS § 706-662 was taken from § 703 of the Model Penal Code (MPC), with changes not material here. There is some indication that the discretion conferred upon the sentencing judge by § 706-662(4) was intended by the drafters of the MPC to replace the judge's former discretion to impose consecutive, rather than concurrent, sentences. MPC Tent. Draft No. 2, 1954, Comment to § 703 at 38:

The professional criminal . . . and offenders who present a special danger by reason of gravely abnormal mental condition may present an equal problem of control. There may also be need for power to enlarge the term because of the

legislative intent. HRS § 701-105. We are aware of nothing which would indicate that the criterion expressed in the other subsections was omitted from § 706-662(4) by mistake, and the drafting history is to the contrary. We must proceed upon the assumption that the restraint imposed upon the sentencing judge's discretion under §§ 706-662(1), (2) and (3) was intentionally omitted in § 706-662(4).

Yet the unduly broad discretion conferred by the unaided language of § 662(4) may be viewed as encompassing a more limited discretion. Although its express wording does not confine the sentencing judge by such a standard, the judge would be well within the scope of the authority conferred by § 662(4) if he were to determine, when dealing with a multiple offender, that an extended term sentence is warranted because necessary for protection of the public. In a different context, we have narrowed the breadth of a criminal statute to confine it to its constitutional limits. *State v. Manzo*, 58 Haw. 440, 573 P.2d 945 (1977). If we assume that the legislature intended in § 662(4) to authorize the exercise of a broader

---

extent of the defendant's criminality, since consecutive sentences on multiple convictions are sharply limited by [this code].

The commentary to § 706-662 does not indicate that this purpose was in the minds of the drafters of the Hawaii Penal Code. The drafters state that persistent, professional, dangerous *and* multiple offenders, "[u]nlike other offenders, . . . . should be subject to possible extended terms because their records or situations indicate that extended incarceration may be necessary to protect the public. In these cases, rehabilitation, if possible, is unlikely to be achieved within an ordinary term". On the other hand, the commentary to § 706-668, which section requires that multiple sentences be served concurrently, states that consecutive sentences were not authorized because "the sections providing for extended terms of imprisonment more adequately and directly address the question of need for extended incarceration of a multiple offender". This commentary goes on to say:

The Code, however, accepts extended terms — and in so doing has provided the relevant criteria which must be assessed in each case where the possibility of incarceration for an extended period is proposed. By so doing, the Code focuses on the relevant issue, *i.e.*, whether the defendant's prolonged incarceration is necessary for the protection of the public.

The commentary thus appears to assume that § 706-662(4) contains the criterion of necessity for protection of the public which is expressed in §§ 706-662(1), (2) and (3). We have found no statement of the reason for its omission in either of § 706-662(4) or the corresponding subsection of the parent MPC § 703.

discretion, a limitation of the sentencing judge's discretion to that which he may constitutionally exercise does not invade the legislature's prerogative unless it appears that the legislature would not have granted the part in the absence of the whole. The legislative history does not reflect such an intent and we see no basis to infer it. We therefore construe HRS § 706-662(4) by substituting for the unduly broad term "warranted" the more limited standard "necessary for protection of the public." For the reasons which are set forth in part III, we conclude that, as so construed, § 662(4) provides the necessary constraint upon the discretion of the sentencing judge and is not constitutionally defective because of vagueness or uncertainty.

The construction which we have placed on § 662(4) should not be taken as making subsection (4) available for any purpose which its literal terms would not serve. Section 662(3) deals with dangerous persons and requires a psychiatric examination to support the sentencing judge's determination that commitment for an extended term is necessary for protection of the public. It is not our intent to encourage resort to subsection (4) as a means of avoiding the psychiatric examination required by subsection (3). The effect of any overlap of these subsections, which of course has not been enlarged by our construction of subsection (4), must be dealt with when the case arises.

The record in these cases does not disclose that the sentencing judge gave any consideration to protection of the public as a reason for imposing the extended terms, as distinguished from the purely retributive purpose of enhancing the punishment inflicted on appellant for his offenses. We find it necessary, therefore, to again remand these cases for resentencing in light of this opinion and need not deal in detail with appellant's contentions with respect to the extended term sentence proceedings from which these appeals are taken.

The present appeal exemplifies how difficult it may be to determine from the record of an extended term sentence hearing whether the discretion of the sentencing court was exercised within the statutory guidelines. The practice followed by sentencing courts of entering conclusory findings in

the language of the applicable subsection of § 662 tends to force upon this court a choice between treating the sentencing decision as essentially non-reviewable or involving itself unduly in the exercise of sentencing discretion. Accordingly, we direct that in further proceedings in these cases, and in all other cases in which appeals may hereafter be taken from extended term sentences, the sentencing court shall state on the record its reasons for determining that commitment of the defendant for an extended term is necessary for protection of the public and shall enter into the record all findings of fact which are necessary to its decision. The record in each such case shall include the presentence report and all evidence considered by the sentencing court.

The sentences are vacated and these cases are remanded for further proceedings consistent with this opinion.

*Edward R. Lebb (Ing, Lebb and Yano* of counsel) for defendant-appellant.

*Charles Viviano,* Special Deputy Prosecuting Attorney (*Roy K. S. Chang,* Deputy Prosecuting Attorney, on the brief) City & County of Honolulu, for plaintiff-appellee.