STATE OF HAWAII, Plaintiff-Appellee, *v*. GARY ORTEZ, Defendant-Appellant

NO. 6407

DECEMBER 14, 1978

RICHARDSON, C.J., KOBAYASHI, MENOR
and KIDWELL, JJ., and CIRCUIT JUDGE LUM
in place of OGATA, J., Disqualified

OPINION OF THE COURT BY KIDWELL, J.

This case is before us on appeal from the denial of appellant's motion for reduction of sentence pursuant to Act 188, Sess. L. 1975, which is set forth in full in the margin.[1] Appellant was indicted on September 29, 1971 for murder in the

---

[1]        ACT 188

                                                        S.B. NO. 1624

A Bill for an Act Relating to the Application of the Hawaii Penal Code to Persons Sentenced Prior to its Effective Date.

*Be It Enacted by the Legislature of the State of Hawaii:*

SECTION 1. Purpose.  The legislature finds that some persons convicted of the same crimes are under different sentences and serving different terms of imprisonment.

The purpose of this Act is to conform the sentences of certain felons convicted prior to the effective date of the Hawaii Penal Code to the provisions within the code. The intent is to grant equal application of justice demanded by adherence to the highest standards of jurisprudence.

SECTION 2.   General applicability.

(1) All convicted felons who have not been discharged from institutional custody by the State and who did not receive the maximum term of sentence upon conviction under the provisions of the Hawaii Penal Code of 1972,† and make *initial determination as to whether further deliberation of each such public offender's case should be pursued as (a) one for ordinary term under Section 660 of the Hawaii Penal Code or (b) one for extended term under Section 661 or of sentence for offenses of murder under Section 606 of the Hawaii Penal Code.

(2) The Court in each case shall review those maximum terms of sentence which were not given under the provisions of the Penal Code of 1972.

(3) The Court may by order reset the maximum term of sentence in accordance with provisions of the Hawaii Penal Code of 1972 to comply with the category or class of crime as determined by the Court. The Court shall not be

---

† So in original, but it appears that some words are missing from this section at the place indicated by the dagger.

first degree. He was adjudged guilty of murder in the second degree upon his plea of guilty and was sentenced on September 1, 1972 to imprisonment for 45 years. At the time of appellant's offense and sentencing, the crimes of murder in the first and second degrees and the punishment therefor were defined as follows:

§ 748-1 Murder, first degree. Murder in the first degree is the killing of any human being without authority, justification, or extenuation by law done:

(1) With deliberate premeditated malice aforethought; or

(2) With malice aforethought and with extreme atrocity or cruelty; or

---

obligated to order the resetting of the maximum term of sentence in any individual case. The Court may do so in any such case at its own discretion or upon demonstration of cause by the convicted offender under consideration.

(4) For the public offenders, whose parole, discharge, or other form of release has been granted by the proper authority, such sentences do not fall under the provisions of this Act.

(5) No later than 90 days after the effective date of the Act, the director of the department of social services and housing shall submit to each Court the respective list of those public offenders eligible under this Act.

(6) Should the Court's order resetting the maximum term of sentence cause the public offender to have served the maximum term, or more, the convicted felon shall be discharged from custody, effective the date of the order.

(7) The Court shall follow in all cases those policies of the Hawaii Penal Code for sentencing generally where an order to reset the maximum term of sentence is to be given under the provisions of this Act.

(8) In no case shall the maximum term of sentence be increased under the provisions of this Act.

(9) Notwithstanding Section 668 of the Hawaii Penal Code, the Court shall, in the case of public offenders presently serving consecutive terms, have discretion as to whether concurrent or consecutive terms are to be applied.

SECTION 3. Ordinary terms.

Where the Court has determined that ordinary term under Section 660 of the Hawaii Penal Code is applicable, there shall be no automatic right to appear before the Court of jurisdiction for each public offender qualified under this Act, nor shall the Court be required to hold formal hearings before the order resetting maximum sentence. The Court, at its discretion or upon written demonstration of cause by the public offender, may do either or both in its deliberation. In each case, the Court shall inform the convicted felon in writing as to its order within 10 working days of determination, and all such orders shall become a matter of record for the Court.

110

(3) In the commission of or attempt to commit or the flight from the commission of or attempt to commit arson, rape, robbery, burglary, or kidnapping.

§ 748-2 Murder, second degree. Murder in the second degree is the killing of any human being with malice aforethought without authority, justification, or extenuation by law.

§ 748-4 Penalties. Whoever is guilty of murder in the first degree shall be punished by imprisonment at hard labor for life not subject to parole. Whoever is guilty of murder in the second degree shall be punished by imprisonment at hard labor for any number of years but for a term not less than twenty years.

SECTION 4. Extended terms and special cases.

(1) Where the Court has determined that extended term under Section 661 or of sentence for offense or murder under Section 606 of the Hawaii Penal Code is applicable, a formal hearing before the original Court with jurisdiction shall be required.
(2) Such hearings shall be conducted under the Extended Sentencing or Special Sentencing provisions of the Hawaii Penal Code, whichever shall apply. The same jurisdiction for ordering sentencing under these provisions shall apply to the resetting of the maximum term of sentence for "Special Cases" under the provisions of this Act.

SECTION 5. Good time credits.

In those cases where the public offender received the original maximum and minimum term of sentence prior to the effective date of Act 264, Session Laws of Hawaii 1967, and has been continuously incarcerated under the authority of the State of Hawaii without obtaining parole, discharge or other form of release from custody, no part of this Act shall be interpreted as removing any "good time" credit from either the maximum or minimum term of sentence.

SECTION 6. Validity of conviction.

This Act is for special persons under special conditions, and no part of this Act shall be interpreted as to effect the procedural validity of any conviction for any such person.

SECTION 7. Effective date.

This Act shall take effect upon its approval.

(Approved June 2, 1975.)

By enactment of the Hawaii Penal Code (HPC), effective January 1, 1973, non-negligent homicides were divided into the offenses of murder and manslaughter. These offenses were defined as follows:

§ 707-701 Murder. (1) Except as provided in section 707-702, a person commits the offense of murder if he intentionally or knowingly causes the death of another person.

(2) Murder is a class A felony for which the defendant shall be sentenced to imprisonment as provided in section 706-606.

§ 707-702 Manslaughter. (1) A person commits the offense of manslaughter if:

(a) He recklessly causes the death of another person; or

(b) He intentionally causes another person to commit suicide.

(2) In a prosecution for murder it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the view-point of a person in the defendant's situation under the circumstances as he believed them to be.

(3) Manslaughter is a class B felony.

The HPC, by HRS § 706-606, fixes the penalty for murder as an indeterminate term, the minimum length of which is to be determined by the board of paroles and pardons and the maximum length of which is, in certain cases with which we are not concerned here, life imprisonment without possibility of parole, and in all other cases life imprisonment with possibility of parole or 20 years, as the court determines. The penalty for manslaughter, as a class B felony, is fixed by HRS § 706-660 at the maximum of 10 years, subject by HRS § 706-661 to extension to 20 years under the criteria for extended terms of imprisonment provided by HRS § 706-662, with the minimum term to be fixed by the board of paroles and pardons.

The record does not disclose how appellant's pre-HPC sentence first came to the attention of the circuit court under Act 188, but shows that on January 27, 1976 the circuit court ordered that no change be made in the sentence. On July 14, 1976, appellant moved for reconsideration of this order and for reduction of his sentence pursuant to Act 188, supporting the motion by copies of reports setting forth appellant's response to psychotherapy programs during his confinement and other reports relating to appellant's post-sentence conduct and improvement. Appellant's motion was heard upon argument by counsel, without taking evidence. The judge orally ruled that any event subsequent to appellant's initial incarceration was not a proper matter for the court to consider and denied the motion, orally basing the denial upon "the examination of the facts in the case at that time, and the presentence report prepared at that time". The presentence report prepared with respect to appellant's sentencing, together with a correctional plan prepared by the Adult Diagnostic Center subsequent to his sentencing, contain versions of the facts of appellant's crime and are in the record. A version of the facts of appellant's crime is also contained in an affidavit of appellant attached to his motion.

Appellant contends that Act 188 should be read as mandating the resetting of the maximum term of appellant's sentence in accordance with the HPC, and that reduction of appellant's sentence to a term of 20 years for murder or an ordinary term of 10 years for manslaughter are the only actions the court can take without a formal hearing which satisfies the requirements for extended term sentencing under the HPC. Alternatively, if Act 188 is not to be read as mandating the resetting of appellant's sentence, appellant contends that it should be read as requiring that a hearing which satisfies the same requirement be held upon appellant's application for such resetting before denial of the application. Appellant attempts to support these contentions by arguments based upon principles of statutory construction and constitutional guaranties. Finally, all else failing, appellant contends that the court erred in refusing to consider appellant's post-

sentencing conduct.[2]

We conclude that Act 188 confers on the circuit court a guided discretion to reset appellant's sentence and that the standards governing that discretion require that the court have regard to the history, character and condition of appellant, including his post-sentence conduct and present condition, in arriving at its decision. Accordingly, although we otherwise reject appellant's contentions, we remand the case for reconsideration of appellant's motion.

I.

The Hawaii Penal Code became effective on January 1, 1973. It accomplished a fundamental change in the structure of criminal penalties and in sentencing procedures under Hawaii law. Prior to the HPC, Hawaii penal law was characterized by "a multitude of different sentences which [were] not necessarily consistent with one another or adequately correlated to the relative seriousness of the offense". Commentary, HRS § 706-610. Except where the law prescribed a maximum penalty which consisted of or included an indeterminate period of years, the court was required, if it did not grant probation, to impose the maximum sentence permitted by law. State v. Sacoco and Cuaresma, 45 Haw. 288 (1961). The minimum term to be served before the offender became eligible for parole was fixed by the board of paroles and pardons. The sentencing court was thus, in most cases, without authority to vary the maximum sentence imposed as between the ordinary defendant and the exceptionally difficult defendant.

The scheme adopted by the HPC classifies offenses and fixes maximum terms of imprisonment uniformly for each class. As was generally true under pre-HPC law, but now with fewer exceptions, a court not granting probation or suspen-

---

[2] No suggestion has been made by the parties that the constitutionality of Act 188 is in question and the issue is not before us. While the power of a state legislature to enact legislation reducing existing sentences has been successfully challenged in some states, the courts are not in agreement. See State v. Morris, 378 N.E.2d 708 (Ohio 1978), and cases cited therein.

sion of sentence is required to impose the maximum sentence. No authority is given the court to vary the maximum terms of ordinary sentences, but extended terms may be imposed in the cases of exceptionally difficult defendants.[3] As is pointed out in the commentary to HRS § 706-660, by providing for extended terms in exceptional cases the HPC scheme enables a less severe ordinary sentence to be imposed on the ordinary criminal.

As a result of the enactment of the HPC, it has become possible that an offense may receive different punishment, depending upon whether the sentence is under pre-HPC law or under the HPC. Variances may be of several types. An ordinary sentence under the HPC may be less than the statutory maximum sentence imposed under pre-HPC law. The statutory maximum pre-HPC sentence may also exceed the extended sentence authorized by the HPC. Finally, where the court had discretion to fix the maximum sentence under pre-HPC law, the sentence so imposed may exceed either or both the ordinary and extended term sentences provided by the HPC for the most nearly comparable offense.

## II.

In an effort to deal with this situation, the legislature enacted Act 188 of the 1975 session. As originally introduced in the legislature, this statute would have mandated adjustments of pre-HPC sentences to conform to the HPC in all instances. In the course of passage, the bill was amended to provide that adjustments shall be made only where the reviewing judge so determines. The threshold question in this appeal is presented by appellant's contention that Act 188 should be interpreted as mandating adjustment of his sentence.

In spite of the obvious drafting or engrossing mistake in § 2(1) of Act 188, the legislative intent that the reviewing court

---

[3] The extended term sentencing provisions of the HPC are dealt with in *State v. Huelsman*, 60 Haw. 71, 588 P.2d 394 (1978).

shall have discretion to deny adjustment of any particular sentence is clear beyond argument. The Act provides:

> § 2(3) The Court may by order reset the maximum term of sentence in accordance with provisions of the Hawaii Penal Code of 1972 to comply with the category or class of crime as determined by the Court. The Court shall not be obligated to order the resetting of the maximum term of sentence in any individual case. The Court may do so in any such case at its own discretion or upon demonstration of cause by the convicted offender under consideration.

Appellant seeks to bring this case within the rule that permits departure from the strict letter of a statute when adherence to the letter will lead to absurdity or palpable injustice.[4] Even assuming that this principle of statutory construction permits disregard of legislative intent expressed as clearly as in the present instance, we see no absurdity or palpable injustice to be avoided by judicial construction. As appellant acknowledges in his brief, amendments of the criminal laws need not be made effective with respect to offenders serving sentences under the former law.[5] The failure of the HPC to provide for adjustment of pre-HPC sentences did not lead to an absurd or unjust result in the sense that it might be regarded as beyond the contemplation of the legislature. A stronger argument might be made if the discretion granted to the reviewing court were wholly arbitrary and such as to permit capricious selection of those pre-HPC sentences which are to be adjusted and those which are to be permitted to stand. This is not the case.

Act 188 requires the trial court to conduct a serious review of each case to determine whether an adjustment should be made. The Act recites a purpose "to grant equal application of justice." Act 188, § 1. The legislative history reflects an intent that where there is substantial similarity, in the essen-

---

[4] Appellant cites *Pacific Ins. Co., Ltd. v. Oregon Automobile Ins. Co.*, 53 Haw. 208, 490 P.2d 899 (1971) and the cases cited therein.

[5] *Rives v. O'Hearne*, 64 U.S. App. D.C. 48, 73 F.2d 984 (1934). *See generally*, Note, Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation, 121 U. Pa. L. Rev. 120 (1972).

tial facts, between the pre-HPC offense and the HPC offense, the sentence should be adjusted to conform to the pertinent provisions of the Hawaii Penal Code except where "the old sentence was, and continues to be, fair." 1975 House Journal 1316. As a guide to the exercise of the court's discretion in reviewing pre-HPC sentences, the legislature provided in § 2(7) of Act 188:

> The Court shall follow in all cases those policies of the Hawaii Penal Code for sentencing generally where an order to reset the maximum term of sentence is to be given under the provisions of this Act.

The question which the reviewing court must resolve under Act 188 is whether the sentence which a particular offender is to serve should depart from the norm established by the HPC. Provision is made by the HPC for departure in sentencing from the established norms, by a grant of discretion to the sentencing court to impose extended term sentences under the standards defined by HRS § 706-622. In *State v. Huelsman,* 60 Haw. 71, 588 P.2d 394 (1978), we very recently gave consideration to these standards. We think that they reflect quite clearly the policies of the HPC for dealing with problems of the sort presented to the reviewing court under Act 188 and that they provide adequate criteria for determining when a pre-HPC sentence remains fair although more severe than the ordinary sentence imposed for the comparable offense under the HPC. The existence of these standards and their incorporation into Act 188 by § 2(7) satisfies the need for specificity in sentencing standards which we saw in *Huelsman.* The criterion which the court must apply under the HPC in imposing an extended term sentence is, as defined in § 706-662 and in *Huelsman,* that the imposition of the extended term is "necessary for protection of the public." The standard of review of pre-HPC sentences under Act 188 is identical. To find that a pre-HPC sentence remains fair although it exceeds the HPC sentence, the reviewing court should find that commitment for the term of the original sentence is necessary for protection of the public.

In determining whether the original sentence continues to be fair, the reviewing court should take into account the

legislative rationale in providing a lesser penalty for the same offense, the circumstances of the pre-HPC offense and the grounds upon which the sentencing court imposed the original sentence. The manner in which the offense was committed, the extensive criminal history of the defendant prior to sentence and his demonstrated propensity to commit crimes may also be relevant to the question whether the old sentence continues to be fair. In incorporating the policies of § 706-662, however, Act 188 does not incorporate the criteria which must be applied under the HPC to determine whether the particular offender is in a category of offenders who are subject to extended term sentencing. That question is answered by Act 188 as to any offender serving a pre-HPC sentence.

These conclusions furnish the foundation for our consideration of appellant's contentions with respect to the nature of the hearing to which he was entitled.

### III.

Act 188 contains no statutory directive with respect to the procedure to be followed by the reviewing court in making the initial determination whether a pre-HPC sentence shall be adjusted. Section 3 provides that the court "shall not be required to hold formal hearings before the order resetting maximum sentence." In its literal terms § 3 deals only with the procedural requisites of an order granting adjustment of the sentence and not with the procedural requisites of an order denying such adjustment. The selection by the court of the category or class of offense defined by the HPC to be treated as comparable to the defendant's pre-HPC crime is a matter of concern to the defendant and § 3 has meaning and significance even if confined only to the right of the defendant to be heard as to that question. Nevertheless, the matter of greatest concern to the defendant is the determination by the court whether the pre-HPC sentence shall be adjusted. The specific denial of a hearing on the nature of the adjustment to be made militates strongly, in our view, against an implication of a statutory right of the defendant to be heard earlier.

The present question involves us also in consideration of the garbled § 2(1), which reads:

All convicted felons who have not been discharged from institutional custody by the State and who did not receive the maximum term of sentence upon conviction under the provisions of the Hawaii Penal Code of 1972,† and make initial determination as to whether further deliberation of each such public offender's case should be pursued as (a) one for ordinary term under Section 660 of the Hawaii Penal Code or (b) one for extended term under Section 661 or of sentence for offenses of murder under Section 606 of the Hawaii Penal Code.

The obvious omission at the point of the dagger is unexplained in the legislative history of Act 188. The remaining provisions of Act 188 sufficiently prescribe the powers and duties of the court to enable the statute to be given effect without attempting to fill the gap in § 2(1). Nevertheless, it is apparent that the words which were omitted from § 2(1) might well have provided a procedure for the making of the initial determination whether a pre-HPC sentence should be reset. Appellant would remedy this omission, at least in part, by implying that an extended term type hearing must be held in those cases in which the pre-HPC sentence equals or exceeds the ordinary HPC sentence. But the implication of such a requirement must depend on some evidence of legislative intent other than the gap in § 2(1), from which no inference can be drawn. Since our examination of the remainder of Act 188 has pointed in the opposite direction, we leave the uncertainties of § 2(1) unresolved. We conclude that Act 188 imposes on the reviewing court no obligation to afford a defendant any hearing upon the question whether a pre-HPC sentence shall be reset. Nevertheless, constitutional guaranties may require that minimum procedural standards be observed.

IV.

The fact that Act 188 provides guides for the exercise of the reviewing court's discretion does not alone make applica-

ble any constitutional procedural requirement. The initial determination by the reviewing court with respect to whether a pre-HPC sentence shall be reset is a part of an ordinary sentencing process such as those which we considered in *State v. Nobriga*, 56 Haw. 75, 527 P.2d 1269 (1974), and in *State v. Huelsman, supra.* For the reasons explained in *Huelsman,* in the process of making this determination under Act 188 the reviewing court is free from the procedural requirements which we laid down in *State v. Kamae*, 56 Haw. 628, 548 P.2d 632 (1976). However, in *Huelsman* we did not have occasion to consider what procedural protections are constitutionally guaranteed in ordinary sentencing. Appellant contends that he was constitutionally entitled to a hearing with the same formalities mandated by HRS § 706-664 in the imposition of extended term sentences.

In *Gardner v. Florida*, 430 U.S. 349 (1977), the plurality opinion declares:

> [I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel. *Mempa v. Rhay*, 389 U.S. 128; *Specht v. Patterson*, 386 U.S. 605. The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process.

430 U.S. at 358.

Nevertheless, this formulation did not receive the concurrence of a majority of the Court and the extent to which the Due Process Clause applies to sentencing procedures is unresolved by the United States Supreme Court. See Note — Gardner v. Florida: The Application of Due Process to Sentencing Procedures, 63 Va. L. Rev. 1281 (1977). *Williams v. New York*, 337 U.S. 241 (1949), denied a due process right of a convicted defendant to confront and cross-examine witnesses who supplied information for a presentence report. We have

said that the full panoply of protections which due process requires in criminal proceedings does not apply in ordinary sentencing. *State v. Huelsman, supra*. But, as the plurality opinion in *Gardner* points out, due process may apply in sentencing without implicating the entire panoply of criminal trial procedural rights. 430 U.S. at 358, n.9.

Concern for preserving informality in sentencing procedures underlies the reluctance of courts and commentators to see due process as requiring procedural formalities. It is argued that the "humanitarian" system of individualized sentences[6] requires that the sentencing judge have wide discretion in gathering and using informational data. See, *e.g.*, *Dorszynski v. United States*, 418 U.S. 424, 441-42 (1974). Achieving the objective of individualized sentencing through formal procedures, if not considered wholly impractical, has been regarded as at least imposing overwhelming burdens on the trial courts. Thus, the Committee on Minimum Standards for the Administration of Justice of the American Bar Association argues that the method of the criminal law as employed at trial need not be carried over into the sentencing phase. Nevertheless, the Committee says: "[T]he substantial deprivation of liberty which can result from sentencing choices demands the minimal procedural protection afforded by notice of the information which is being considered and an opportunity to participate which that notice affords." Standards Relating to Sentencing Alternatives and Procedures, American Bar Association § 5.5, Comment c (1968). The minimum procedural requirement so recommended may be supported by *Townsend v. Burke*, 334 U.S. 736 (1948), in which it was held to be inconsistent with due process to

---

[6] "The 'individualized treatment model' of the sentencing process has been accepted almost without question for the last generation. The universality of its acceptance seems attributable to the convergence of several different forces: the fundamental, democratic belief that the uniqueness of each individual must be respected, the clinical theory that criminal misconduct is the product of psychological abnormality or malfunction, the desire of behavioral and correctional experts to be free from the interference of lawyers and the confines of an adversarial system, and the unanimously recognized need for some mechanism by which to mitigate the harshness of fixed sentences." Coffee, The Future of Sentencing Reform: Emerging Legal Issues in the Individualization of Justice, 73 Mich. L. Rev. 1361, 1365 (1975).

sentence a defendant, in the absence of counsel, on the basis of assumptions concerning his criminal record which were materially untrue. The opportunity of counsel to see that the conviction and sentence were not predicated on misinformation or misreading of court records was termed a requirement of fair play which had been withheld from the defendant. *Gardner v. Florida, supra,* does not suggest a higher standard of procedural due process in ordinary sentencing than that enunciated in *Townsend,* and authority for extending other criminal trial procedural rights to such sentencing appears to be lacking.[7] Even the apparent confirmation in *Townsend* of the minimum procedural requirement stated above is in doubt by reason of the decision a year later in *Williams v. New York, supra.* Note, The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals, 89 Harv. L. Rev. 356, 362, n.32 (1975).

In the present case, the court reached its conclusions with respect to appellant's sentence in a hearing in which appellant was represented by counsel and in which the information upon which the court proposed to act was disclosed. Appellant did not request an opportunity to offer any additional information or evidence, and there is no indication that such an opportunity would have been denied. *Cf. United States v. Powell,* 487 F.2d 325 (4th Cir. 1973). There was no request for confrontation and cross-examination of any of the court's informants. *Cf. United States v. Fatico,* 579 F.2d 707 (2d Cir. 1978). We do not have before us a case in which we may appropriately define the minimum due process standards which apply in ordinary sentencing procedures, except that we find that the hearing procedure which was followed was equally or more protective than we consider to be constitutionally required.

---

[7] See Coffee, The Future of Sentencing Reform: Emerging Issues in the Individualization of Justice, 73 Mich. L. Rev. 1361 (1975); Pugh & Carver, Due Process and Sentencing: From Mapp to Mempa to McGautha, 49 Texas L. Rev. 25 (1970); Note, Procedural Due Process at Judicial Sentencing for Felony, 81 Harv. L. Rev. 821 (1968).

V.

But the fact that we do not find a denial of due process in the procedure followed by the circuit court does not dispose of this case. The sentencing standards announced in part II of this opinion require that the court give appropriate consideration to the history, character and condition of the defendant as disclosed by such information as is in the court's possession. Act 188 provides in Section 3, among the few procedural guaranties it affords the defendant, that he be permitted to present to the court "written demonstration of cause" for the resetting of his sentence. Appellant provided information, with respect to his history, character and condition subsequent to his original sentencing, which the court expressly refused to consider. In so doing, the court misread Act 188 and departed from the policy guidelines provided by the Act.

The privilege afforded a defendant by Act 188 to present to the court written demonstration of cause for the resetting of his sentence is of the same nature as the requirement of Rule 32(a)(1), Fed.R.Crim.P., that "before imposing sentence the court shall afford" the defendant an opportunity "to present any information in mitigation of punishment". In *United States v. Malcolm*, 432 F.2d 809 (2d Cir. 1970), the sentencing judge misread the presentence report and refused to permit the prosecutor to confirm defense counsel's claim, offered in mitigation, that the defendant had shown willingness to cooperate with the authorities. The Court of Appeals recognized that the judge, in his discretion, was not required to lighten the sentence because of the presence of these mitigating circumstances. However, it held that the judge was required to listen and give serious consideration to any information material to mitigation of punishment, and that his failure to do so required reversal and remand for sentencing.

Refusal of the court to give consideration to information presented by the appellant bearing on his postsentence conduct and character improvement was tantamount to denial of appellant's statutory privilege to place this information before the court. Moreover, the legislative debates preceding the passage of Act 188 give this court some indication that

evidence of the postsentencing conduct was contemplated. In concluding the debates, Representative Cobb stated:

> Finally, a note on the bill before us, is that this measure will in no way guarantee a reduction of any sentence. It will provide, however, an opportunity to consider the maximum and to consider the inmate's behavior since being committed to an institution as one of the motivating factors for good behavior in a possible, and I emphasize the word, possible, reduction of the maximum sentence. It does nothing more.

1975 House Journal 634.

Since the information was precisely that which the court was required to consider in determining whether and how to reset appellant's sentence, refusal to take it into consideration was prejudicial error. The error requires that the order of the court denying a resetting of appellant's sentence be set aside and that the matter be remanded for reconsideration of appellant's motion.

## VI.

We have expressed no opinion whether appellant's sentence should be reset and that determination is for the circuit court to make. If the court determines that appellant's present maximum sentence should be reset, Act 188 requires that the sentence shall be reset "in accordance with the provisions of the Hawaii Penal Code of 1972 to comply with the category or class of crime as determined by the court." Act 188, Sec. (3). But the crime of which appellant has been convicted is defined in a manner which has no precise counterpart in the HPC.

Appellant was convicted, under the former HRS § 748-2, of the killing of a human being "with malice aforethought without authority, justification or extenuation by law." What state of mind or circumstance was requisite to create "malice aforethought" was not defined by statute at the time of appellant's conviction. *State v. Moeller*, 50 Haw. 110, 433 P.2d 136 (1967). It cannot be determined from the definition of the crime of which appellant was convicted whether he would

have been guilty of murder or manslaughter, as defined in HRS §§ 707-701 and 707-702, had the offense been committed after January 1, 1973. If the court determines that appellant's sentence should be reset, the relevant HPC sentence can be ascertained only by a factual inquiry which is sufficient to enable the court to determine what HPC offense was committed by appellant's conduct.

Although the determination of the relevant HPC offense involves a factual inquiry by the court, it is an inquiry made in the course of and for the purpose of guiding its sentencing discretion. No greater formality should be required with respect to the court's inquiry into these facts than with respect to the facts which the court is otherwise required to ascertain and consider to fulfill its sentencing responsibility. The circumstances of the crime as disclosed by the presentence report and other information properly before the court may be considered by it in determining both whether to reset the sentence and what category of offense defined in the HPC is relevant in the resetting of the sentence.

## VII.

Our review of the exercise of a reviewing court's discretion under Act 188 presents essentially the same difficulties as those we face in reviewing the exercise of a sentencing court's discretion in imposing extended term sentences. In *State v. Huelsman, supra,* we established requirements with respect to the record in appeals from extended term sentences. The similarity of the standards which guide the court's discretion under Act 188 makes similar requirements equally appropriate and necessary with respect to appeals from the exercise of that discretion. Accordingly, we direct that in further proceedings in the present case, and in all other cases in which appeals may hereafter be taken from the review of sentences under Act 188, the reviewing court shall state on the record the reasons for its determinations and shall enter into the record all findings of fact which are necessary to its decision. The record in each case shall include any presentence report and other evidence considered

by the reviewing court.

The order appealed from is reversed and the case is remanded for further proceedings consistent with this opinion.

*Sherry P. Broder and David S. Hobler* (Hawaii Correctional Legal Services, Inc. of counsel) for defendant-appellant.

*Francis I. Yamashita,* Deputy Prosecuting Attorney, City & County of Honolulu, for plaintiff-appellee.