983 P.2d 819

STATE of Hawai'i, Plaintiff–Appellee,

v.

Florendo GUILLERMO, Defendant–
Appellant,

and

David K. Hashimoto, George M. Tanisue,
Leo Bajo, Aurelio Barro, Alfred L. Cani-
anes and Henry A. Alejandro, Defen-
dants

No. 21718.

Supreme Court of Hawai'i.

Sept. 7, 1999.

Linda C.R. Jameson, Deputy Public Defender, on the briefs, for defendant-appellant.

James M. Anderson, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by RAMIL, J.

Defendant-appellant Florendo Guillermo appeals from the circuit court's denial of his motion for resentencing filed on June 4, 1998, pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 35 (1980)[1] and Rule 47 (1977).[2] Guillermo contends that the circuit court erred in (1) concluding that Guillermo's case did not fall within the purview of Act 188, Hawai'i Session Laws of 1975, and (2) failing to enter sufficient findings of fact pursuant to *State v. Ortez*, 60 Haw. 107, 588 P.2d 898 (1978). We agree with both contentions and, accordingly, vacate the June 19, 1998 order denying Guillermo's motion for resentencing and remand for further proceedings consistent with this opinion.[3]

## I. BACKGROUND

### A. The 1959 Rape and Robbery Convictions

In mid-September 1959, Guillermo, along with co-defendants, David K. Hashimoto, George M. Tanisue, Leo Bajo, Aurelio Barro, Alfred L. Canianes, and Henry A. Alejandro, were indicted and tried in the First Circuit Court for rape, in violation of Revised Laws of Hawai'i (RLH) § 309–31 (1955),[4] and robbery in the second degree, in violation of RLH §§ 306–1 and 306–8 (1955).[5] *See State*

---

1. HRPP Rule 35 provides:
 **Correction or Reduction of Sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 90 days after the sentence is imposed, or within 90 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 90 days after entry of any order or judgment of the Supreme Court of the United States denying review of, or having the effect of upholding a judgment of conviction. A motion to correct or reduce a sentence which is made within the time period aforementioned shall empower the court to act on such motion even though the time period has expired. The filing of a notice of appeal shall not deprive the court of jurisdiction to entertain a timely motion to reduce a sentence.

2. HRPP Rule 47 provides:
 **Motions.** An application to the court for an order shall be by motion. A motion other than one made during a trial or hearing shall be in writing unless the court permits it to be made orally. It shall state the grounds upon which it is made and shall set forth the relief or order sought. It may be supported by affidavit.

3. Because a defendant is not always entitled to a hearing under Act 188, *see State v. Ortez*, 60 Haw. 107, 118–21, 588 P.2d 898, 906–908 (1978), the circuit court may, in its discretion, conduct another hearing. Alternatively, the circuit court may enter new findings of fact and conclusions of law consistent with this opinion without conducting a new hearing.

4. *See infra* section III.A.

5. RLH § 306–1 provided: "Robbery is the stealing of a thing from the person of another or from his custody in his presence, by force or by putting him in fear." RLH § 306–8 provided:
 Robbery by one armed with a dangerous weapon with intent, if resisted, to kill, maim, wound or inflict other severe corporal injury upon the person robbed; or where being so

*v. Hashimoto,* 47 Haw. 185, 186–87, 389 P.2d 146, 148–49 (1963); *State v. Hashimoto,* 46 Haw. 183, 183–85, 377 P.2d 728, 730–31 (1962).

According to the evidence upon which there appears to be no dispute, on July 8, 1959, Janet Schenck and her escort Gene Smith drove to Ala Moana Park at approximately 10:30 p.m. While there, the girl waded in the water along the beach for sometime and about three-quarters of an hour later when she and her escort were about to leave, several young men suddenly appeared and surrounded them. One of the men grabbed Smith and together with others started to beat him. At the same time, someone seized Janet and holding both her arms at her back took her to a car parked about two city blocks away and pushed her into it. There was a man at the wheel who drove off as soon as the rest of the boys entered. Janet identified the man at the wheel as defendant Hashimoto and the man who seized her by the arms and took her to the car as Canianes. She testified that the latter told her not to scream for if she did not do so she would not be hurt; that he similarly warned her again while the car proceeded toward Diamond Head; that three of the defendants were in the front seat and four in the rear in addition to herself, she sitting between the legs of Canianes; that she heard the boys talking about sexual relations and rape; that the boys in the rear except Canianes made passes at her and touched places 'they shouldn't have had their hands'; that Canianes 'grabbed something, a coat, jacket or blanket and put it over my legs and told the guys to leave me alone'; that she did not scream because she was scared.

Janet further testified that after they had passed the Blow Hole, the car turned off the road and came to a stop about a city block away where there were many fir trees; that as she was being pushed out of the car, one of the boys choked her neck with both hands and shook her, applying considerable pressure; that she hit her head on the doorsill; that she then 'passed out'; that she remembered that as she was regaining consciousness, she heard somebody say 'I think she's dead'; that somebody was rubbing beer on her face and that 'someone had been jabbing me in the thigh or pushing me or something and it hurt'; that she also remembered that 'there was someone on top of me, maybe up to my stomach, no one close to my face, but I remember the pressure on my body'; that she noticed that she was lying nude on the ground on what seemed like a blanket.

After Janet dressed, she engaged the boys in conversation because, as she testified, she did not know what would happen next. Testifying further, she recalled that in the course of the conversation, Canianes and Guillermo told her they were sorry; that she heard Alejandro say 'Let's get rid of her, she might turn us in, she might get us in trouble'; that while driving back to town, she again heard Alejandro say 'let's feed the sharks'; that as they approached the place where she was to be let off the car, 'They just kept telling me not to say anything because if I did, that I would never get off the island alive and they would hate to have anything happen to me, because it wasn't just them, there were other guys around here to take care of me, too.'

The prosecuting witness also testified that, except during the small hours of the morning of the 9th when she did have sexual intercourse without her consent or knowledge, she had not had sexual intercourse on July 6th, 7th, 8th or up to the noon hour of the 9th when she was given a pelvic examination by Dr. West; and that although her knowledge was derived from her doctor's statement, some of the boys sitting in the car on the back seat with her

armed, the robber in committing the offense wounds or strikes or inflicts other severe injury upon the person robbed, or any other person, is robbery in the first degree; and all other robbery is robbery in the second degree. RLH § 306–11 (1955) provided: "**Penalties.** Whoever commits robbery in the first degree shall be imprisoned at hard labor for life or any number of years, in the discretion of the court. Whoever commits robbery in the second degree shall be imprisoned at hard labor not more than twenty years."

on the return trip told her that she had been used.

Dr. West, who conducted the pelvic examination in the forenoon of July 9th, testified that he had found sperm in the vagina of the prosecuting witness and that the 'more than usual' reddening of the vaginal area 'looked like there had been some sort of excessive friction there.' He stated that in his opinion she had had sexual intercourse within twenty-four to thirty-six hours prior to his examination.

*Hashimoto*, 47 Haw. at 186–89, 389 P.2d at 148–50. On September 24, 1959, Guillermo and all six co-defendants were found guilty of both rape, in Cr. No. 30865, and robbery in the second degree, in Cr. No. 30866. On October 30, 1959, Guillermo was sentenced to twenty years imprisonment for robbery and life imprisonment with the possibility of parole for rape, to be served consecutively.

Although it is not completely clear from this very limited record on appeal, Guillermo was released on parole in approximately 1979 or 1980. In 1991, Guillermo was convicted on an unrelated drug charge in Cr. No. 91–0910, the specifics of which are also not included in the instant record on appeal.[6] Guillermo's parole in the instant case was apparently revoked.

### B. *The Motion for Resentencing*

On June 4, 1998, Guillermo moved for resentencing. Therein, Guillermo sought to reduce his sentence of life imprisonment with the possibility of parole for rape, in Cr. No. 30865, to twenty years, in conformity with the 1972 enactment of the Hawai'i Penal Code (HPC or "the 1972 Code"). Guillermo contended that Act 188 of Hawai'i Session Laws 1975 was enacted to permit courts to review the cases of "persons convicted of the same crimes ... under different sentences and serving different terms of imprisonment" and to amend such sentences in accordance with the 1972 Code. It is unclear from the record on appeal whether Guillermo's name was referred to the courts pursuant to section 2, subsection 5 of Act 188.[7]

Guillermo's motion was heard on June 18, 1998. The following, in relevant part, transpired at the hearing:

| Mr. Bagasol [for Defendant]: | Just briefly, Your Honor. In this case, Your Honor, we — we're asking that he get the twenty-year term consecutive ... to the previous term that he did receive, that is the Robbery in the Second Degree, back in 1959. We believe that's reasonable.<br><br>It's sort of strange for me to ask that he should be deserving of such a sentence because even that particular request is sort of severe in itself. We believe that ... is more consistent with the intentions under Act 188, 19— that was passed in 1975. I do not believe, based upon our review of the records, that his name was forwarded and then reviewed even administratively, much less a formal hearing like today. |
| The Court: | Does he come within the terms of Act 188? |
| Mr. Bagasol: | Our position is that he — he does. And that ... basically that he's been in jail for a long time .... [H]e's sixty-two years old now[.] [H]e's getting up in years, and that now he's got a medical condition.<br><br>We had hoped to get a letter from a doctor by today but I understand that his physician wasn't returning from off island until yesterday so we're not able to provide the Court with except that he does have his nitro pill with him in his pocket and he does have a pacer that was installed in his heart. That would give some indication to the Court about his health condition. His blood pressure varies wildly and that he does experience chest pain .... |

6. Guillermo's counsel explained by way of affidavit that Guillermo was convicted on "a drug charge under Cr. No. 91–0910."

7. *See infra* section III.A.

And based upon, ... the change in circumstances about his age, his health condition, my client also wishes to point out to the Court that as far as the rape charge, he ... finished the SOTP program already and he's worked with Doctor Barry Kwan (phonetic) and completed that back five years ago, I think.

The Defendant: Ten.

Mr. Bagasol: Ten years ago, the SOTP program.

And based upon that and the facts of this case, Your Honor, we ask that ... set aside the life term that was imposed back in 1959, impose a twenty-year sentence even to run consecutive to the Robbery in the Second Degree charge. I don't know if my client has anything further to add but that would be our request.

The Court: ... I just want to make sure that I understand the history. He was sentenced for rape life with parole, consecutive with twenty years for robbery. He [was] then paroled and had had his parole revoked and a new charge had come in. Right?

Mr. Bagasol: That's correct, [in 19]91 his parole ... [was] revoked. That's correct, Your Honor.

The Court: Miss Sonobe Hong.

Ms. Sonobe Hong [for the prosecution]: Your Honor, our first argument is that he does not fall within this act. But even if he did and should the Court have a hearing to reconsider his sentence, having looked at the microfilm files in this case, this defendant has a criminal record that started when he was fifteen. He was committed to the Koolau Youth Facility at the age of fifteen, given numerous chances of parole, even escaped from Koolau.

... [W]hen he was in his early twenties, he was arrested on these charges. The facts show that it was very heinous and atrocious, basically a gang rape of a young coed. She was abducted from a park where she was with a male companion, dragged out towards the Waimanalo area where she was gang raped.

The imposition of the life term consecutive to the robbery which this defendant committed just prior to the gang rape is justified given the facts of this case and his criminal history. And even looking at his criminal history since, having been ordered to serve a life term and given the privilege of parole, he still violated that parole and could not abide by the laws of our society, having been arrested and convicted again in 1991.

Based on that we're asking the Court to deny this motion.

The Court: What year was he paroled?

The Defendant: ... I violated my parole in '91. I get about five years and I was paroled to Victory Ohana.

The Court: Paroling authority set minimum term of fifteen years on the rape, five years on the robbery; right? So when did you first get out?

The Defendant: I think it was 1980 or '79.

The Court: And then in '91 your parole was revoked?

The Defendant: Yes.

**312**

| | |
|---|---|
| The Court: | Well, as I read Act 188, Section 1, subsection 1, it talks about all convicted felons who have not been discharged from institutional custody by the State and who did not receive the maximum term of sentence upon conviction. And it appears to me that he did receive the maximum term so that takes him outside of the statute.

Even if I'm reading the statute wrong and I go ahead and reconsider his sentence, I think the sentence was proper based on his prior record and based on his, subsequent record as well. And so the motion for resentencing is denied.

Miss Sonobe Hong, you'll prepare findings and order please. |
| Ms. Sonobe Hong: | Yes. Thank you, Your Honor. |
| The Court: | Any questions, Mr. Guillermo? |
| The Defendant: | Yes, Your Honor. You know, I was sentenced in 1959, I did a long time. And I know I got parole and I violated the terms of the parole; I had a chance, I admit that the people gave me a break . . . and I abused it.

It took me so long [to] realize what I did, you know, but I've never committed . . . that crime again. And although even if I did commit other—other crimes and I—I abused the authority of being on parole, I—I['m] asking the Court . . . just to at least do away with my life sentence and give me a chance to get out and really just do what I can now 'cause I know that I can be a responsible citizen from now on, I know I can do that. |
| . . . . The Court: | I don't think I have any authority to do away with your life sentence because I don't think you came within the provisions of Act 188. |
| . . . . | If you did come within those provisions, I don't think it's proper for me or I would not reconsider your sentence. Basically what you need to do is talk to the Paroling Authority. |
| The Defendant: | . . . I know the crime was hideous . . . . I did that when I was in my twenties, as young as possible, and I regret to this day from that crime. That's why I went to the—I took the assessments and took everything what they gave me. I passed it with flying colors.

Even Doctor Barry Kwan, he himself said no, this—it's not a guy who goes around and does this kind of thing. It was a gang thing, the seven of us. And I no blame drunk or drinking or anything like that[;] I blame myself for what happened that time. I—to this day, I really regret that I did that crime, you know. I'm not the kind of person. I love my . . . wife, the person that I have, and I wouldn't go around doing that kind of things.

And having had that life term, that's what holding me back meant and I do fall under category of Act 188 because it was a sentence appropriate for the guys who got sentenced before that, I was sentenced since 1959. And had cases that guys had life terms and they were discharged by the Act 188. |
| The Court: | I've made my ruling. I think . . . you need to take up [this] up with the Paroling Authority. |
| . . . . | |

(Brackets added.) The circuit court's decision was reduced to a written order on June 19, 1998. The order states in part:

1. The Court hereby finds and concludes that Act 188, Session Laws of Hawai['i], Eighth State Legislature, does not apply to the Defendant. Therefore, this

Court is not required to review Defendant's sentence under said Act 188.

2. Even assuming that Act 188 applied to this Defendant, the twenty (20) years jail [sentence] for Robbery in Cr. No. 30866 and life imprisonment with the possibility of parole, to run consecutively to Cr. No. 30866, for Rape in Cr. No. 30865, were appropriate and given the Defendant's prior and even subsequent record.

 a. The Defendant committed offenses and was adjudicated as young as fifteen (15) years of age.

 b. The Defendant was committed to the Koolau Training school in 1951.

 c. Even after being granted the privilege of parole for his Rape conviction, for which he received a life imprisonment, he was arrested and convicted under Criminal Number 91–0910.

(Brackets added.) Guillermo timely appealed.

## II. *STANDARDS OF REVIEW*

■■ "The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision." *Keawe v. State*, 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995) (citations omitted). In particular, a circuit court's denial of adjustment of a pre-HPC sentence, under Act 188, is also reviewed for an abuse of discretion. *See Ortez*, 60 Haw. at 114, 588 P.2d at 904 (citing 1975 Haw. Sess. L. Act 188, § 2(1) at 429). "Generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Keawe*, 79 Hawai'i at 284, 901 P.2d at 484 (citations and internal quotation marks omitted).

■■ The circuit court's interpretation of a statute's application is a question of law, which is reviewed *de novo*. *See Wilson v. AIG Hawaii Ins. Co.*, 89 Hawai'i 45, 47, 968 P.2d 647, 649 (1998). Furthermore,

[t]he starting point in statutory construction is to determine the legislative intent from the language of the statute itself.

Our foremost obligation when interpreting a statute is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. We read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

*Id.* (quoting *Mendes v. Hawai'i Ins. Guar. Ass'n*, 87 Hawai'i 14, 17, 950 P.2d 1214, 1217 (1998) (internal citations, quotation marks, and brackets omitted)).

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(10) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.... This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Government Employees Ins. Co. v. Dang*, 89 Hawai'i 8, 12, 967 P.2d 1066, 1070 (1998) (quoting *Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan*, 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998))(some internal citations omitted).

## III. *DISCUSSION*

### A. *Defendant Guillermo's 1959 Conviction Falls within the Purview of Act 188.*

Guillermo contends that the trial court erred in concluding that his 1959 conviction does not fall within the purview of Act 188. We agree. Act 188 provides:

A Bill for an Act Relating to the Application of the Hawaii Penal Code to Persons Sentenced Prior to its Effective Date.

SECTION 1. **Purpose.** The legislature finds that some persons convicted of the same crimes are under different sentences and serving different terms of imprisonment.

The purpose of this Act is to conform the sentences of certain felons convicted prior to the effective date of the Hawaii Penal Code to the provisions within the code. The intent is to grant equal application of justice demanded by adherence to the highest standards of jurisprudence.

SECTION 2. **General applicability.**

(1) *All convicted felons who have not been discharged from institutional custody by the state* and *who did not receive the maximum term of sentence upon conviction under the provisions of the Hawaii Penal Code of 1972,* ... [8] and make initial determination as to whether further deliberation of each such public offender's case should be pursued as (a) one for ordinary term under Section 660 of the Hawaii Penal Code or (b) one for extended term under Section 661 or of sentence for offenses of murder under Section 606 of the Hawaii Penal Code.

(2) The Court in each case shall review those maximum terms of sentence which were not given under the provisions of the Penal Code of 1972.

(3) The Court may by order reset the maximum term of sentence in accordance with provisions of the Hawaii Penal Code of 1972 to comply with the category or class of crime as determined by the Court. The Court shall not be obligated to order the resetting of the maximum term of sentence in any individual case. The Court may do so in any such case at its own discretion or upon demonstration of cause by the convicted offender under consideration.

(4) *For the public offenders, whose parole, discharge, or other form of release has been granted by the proper authori-*ty, *such sentences do not fall under the provisions of this Act.*

(5) No later than 90 days after the effective date of the Act, the director of the department of social services and housing shall submit to each Court the respective list of those public offenders eligible under this Act.

(6) Should the Court's order resetting the maximum term of sentence cause the public offender to have served the maximum term, or more, the convicted felon shall be discharged from custody, effective the date of the order.

(7) The Court shall follow in all cases those policies of the Hawaii Penal Code for sentencing generally where an order to reset the maximum term of sentence by increased under the provisions of this Act.

(8) In no case shall the maximum term of sentence be increased under the provisions of this Act.

(9) Notwithstanding Section 668 of the Hawaii Penal Code, the Court shall, in the case of public offenders presently serving consecutive terms, have discretion as to whether concurrent or consecutive terms are to be applied.

SECTION 3. **Ordinary terms.**

Where the Court has determined that ordinary terms under Section 660 of the Hawaii Penal Code is applicable, there shall be no automatic right to appear before the Court of jurisdiction for each public offender qualified under this Act, nor shall the Court be required to hold formal hearings before the order resetting maximum sentence. The Court, at its discretion or upon written demonstration of cause by the public offender, may do either or both in its deliberation. In each case, the Court shall inform the convicted felon in writing as to its order within 10 working days of determination, and all such orders shall become a matter of record for the Court.

SECTION 4. **Extended terms and special cases.**

---

8. "So in original, but it appears that some words are missing from this section at the place indicated by the dagger." 1975 Haw. Sess. L. Act 188, § 2, at 429.

(1) Where the Court has determined that extended term under Section 661 or of sentence for offense or murder under Section 606 of the Hawaii Penal Code is applicable, a formal hearing before the original Court with jurisdiction shall be required.

(2) Such hearings shall be conducted under the Extended Sentencing or Special Sentencing provisions of the Hawaii Penal Code, whichever shall apply. The same jurisdiction for ordering sentencing under these provisions shall apply to resetting of the maximum term of sentence for "Special Cases" under the provisions of this Act.

SECTION 5. **Good time credits.**

*In those cases where the public offender received the original maximum and minimum term of sentence prior to the effective date of Act 264, Session Laws of Hawaii 1967, and has been continuously incarcerated under the authority of the State of Hawaii without obtaining parole, discharge or other form of release from custody, no part of this Act shall be interpreted as removing any "good time" credit for either the maximum or minimum term of sentence.*

SECTION 6. **Validity of conviction.**

This Act is for special persons under special conditions, and no part of this Act shall be interpreted as to effect the procedural validity of any conviction for any such person.

SECTION 7. **Effective date.**

This Act shall take effect upon its approval.

1975 Haw. Sess. L. Act 188, at 429–31 (emphases added) (footnote in original) (dagger replaced by footnote number).

▮▮ In this case, the circuit court concluded that Act 188 did not apply to Guillermo's pre-HPC conviction because he had "receive[d] the maximum term so that takes him outside of the statute." However, Guillermo was convicted of rape, in violation of RLH § 309–31, which provided:

**Rape; penalty.** Whoever commits a rape, that is, ravishes or has carnal intercourse with any female, by force and against her will, shall be imprisoned at hard labor *for life not subject to parole,* or at hard labor *for life subject to parole,* or any number of years.

(Emphases added.) In 1972, the Hawai'i legislature adopted the Hawai'i Penal Code. The offense of rape in the first degree, as contained within Section 730 of the 1972 Code, stated:

(1) A male commits the offense of rape in the first degree if:

(a) He intentionally engages in sexual intercourse, by forcible compulsion, with a female and:

(i) The female is not, upon the occasion, his voluntary social companion who had within the previous 12 moths permitted him sexual contact; or

(ii) He recklessly inflicts serious bodily injury upon the female; or

(b) He intentionally engages in sexual intercourse with a female who is less than 14 years old and he recklessly inflicts serious bodily injury upon the female.

(2) Rape in the first degree is a class A felony.

1972 Haw. Sess. L. Act 9, § 1, at 90. Section 660 mandated the sentence of twenty years for a class A felony. *See* 1972 Haw. Sess. L. Act 9, § 1 at 79–80.

As noted above, Guillermo received life imprisonment with the possibility of parole, which is *more* than the maximum sentence provided "under the provisions of the Hawai'i Penal Code of 1972." [9] Therefore, in this regard, the circuit court erred in concluding that Act 188 does not apply.

9. Guillermo contended below and on appeal that the "maximum sentence" to which the Act referred was the maximum sentence under RLH § 309–31, *i.e.,* life imprisonment not subject to parole. The plain language of Act 188, however, states that the Act is inapplicable to "all convicted felons ... who did not receive the maximum term of sentence upon conviction under the provisions of the Hawai'i Penal Code of 1972." Because Guillermo received more than the maximum afforded in 1972, when convicted and sentenced in 1959, Act 188 applies to Guillermo's conviction.

Alternatively, the circuit court mentioned that "Act 188, Section 1, subsection 1 ... talks about all convicted felons who have not been discharged from institutional custody by the State...." Guillermo was paroled in approximately 1979 or 1980. Although section 2, subsection 1, which relates to the applicability of Act 188, addressed "[a]ll convicted felons who have not been discharged from institutional custody by the state[,]"[10] the remainder of the sentence is missing. Therefore, the application section is not plain and unambiguous and requires resort beyond the plain language of the statute.

The legislative history underlying Act 188 provides:

> The purpose of this bill is to conform the sentences of certain felons convicted prior to the effective date of the Hawaii Penal Code to the provisions within the code. This bill is for special persons under special conditions. The intent is to grant equal application of justice demanded by adherence to the highest standards of jurisprudence.
>
> *The bill provides that all felons who were not discharged from custody* and did not receive the maximum term of sentence upon conviction would be ordered back to Court. The Court would establish the proper class of felony pursuant to the Penal Code of 1972 for each case. If a convicted felon is found to have served the maximum term of sentence, the public offender would be released from custody. In no case would the maximum term of sentence be increased under the provisions of the bill.
>
> The Parole Board will not be obligated to reset the minimum term of sentence in any case where the Court did not order a resetting of the maximum term of sentence. In those cases of convicted felons in which the maximum term of sentence has been reset, the Board of Paroles and

Pardons will, within 6 months, order a resetting of the minimum term of sentence. In no case would the minimum sentence be increased. In all cases, the Parole Board will retain its full discretionary authority for such matters.

....

Sen. Stand. Comm. Rep. No. 490, 1975 Senate Journal, at 1020.

■ Guillermo was released on parole in 1979 or 1980; yet his parole was revoked in 1991. Considering the intent to afford "equal application of justice demanded by adherence to the highest standards of jurisprudence," it is unjust to conclude that Act 188 does not apply to the instant situation because Guillermo "has been discharged from custody." *See Iddings v. Mee-Lee,* 82 Hawai'i 1, 15, 919 P.2d 263, 277 (1996) ("[I]t is well settled that this court may depart from a plain reading of a statute where a literal interpretation would lead to absurd and/or unjust results." (citations omitted)). Insofar as Guillermo is currently not "discharged from institutional custody by the state" and has not been discharged for purposes of HRS § 706–630, we hold that Act 188 applies.

B. *The Circuit Court Failed to Enter Sufficient Findings before Denying Defendant Guillermo's Motion for Resentencing.*

Guillermo also contends that the circuit court erred in failing to (1) determine whether appellant is a danger to the public and (2) "assess what degree of [r]ape the facts and circumstances of the original [r]ape offense entailed in order to ... classify [properly] the offense in keeping with the present [c]ode." We agree.

In *Ortez,* 60 Haw. at 115–16, 588 P.2d at 905, this court stated:

> ter to collect unpaid fines, restitution, attorney's fees, costs, or interest.

10. Regarding the term "discharge," HRS § 706–630 (Cum.Supp.1998) provides:

> Upon the termination of the period of the probation or the earlier discharge of the defendant, the defendant shall be relieved of any obligations imposed by the order of the court and shall have satisfied the disposition of the court, except as to any action under this chap-

Therefore, a defendant is "discharged" when the defendant "is relieved of any further obligation by operation of law." *See* Commentary on § 706–630. Act 188, however, addresses "defendants who have not been discharged *from institutional custody by the state.*" (Emphasis added.)

Act 188 requires the trial court to conduct a serious review of each case to determine whether an adjustment should be made. The Act recites a purpose "to grant equal application of justice." Act 188, § 1. The legislative history reflects an intent that where there is substantial similarity, in the essential facts, between the pre-HPC offense and the HPC offense, the sentence should be adjusted to conform to the pertinent provisions of the Hawaii Penal Code except where "the old sentence was, and continues to be, fair." 1975 House Journal 1316. As a guide to the exercise of the court's discretion in reviewing pre-HPC sentences, the legislature provided in § 2(7) of Act 188:

> The Court shall follow in all cases those policies of the Hawaii Penal Code for sentencing generally where an order to reset the maximum term of sentence is to be given under the provisions of this Act.

The question which the reviewing court must resolve under Act 188 is whether the sentence which a particular offender is to serve should depart from the norm established by the HPC. Provision is made by the HPC for departure in sentencing from the established norms, by a grant of discretion to the sentencing court to impose extended term sentences under the standards defined by HRS § 706–662. In *State v. Huelsman*, 60 Haw. [308], 588 P.2d 394 (1978), we very recently gave consideration to these standards. We think that they reflect quite clearly the policies of the HPC for dealing with problems of the sort presented to the reviewing court under Act 188 and that they provide adequate criteria for determining when a pre-HPC sentence remains fair although more severe than the ordinary sentence imposed for the comparable offense under the HPC. The existence of these standards and their incorporation into Act 188 by § 2(7) satisfies the need for specificity in sentencing standards which we saw in *Huelsman*. The criterion which the court must apply under the HPC in imposing an extended term sentence is, as defined in § 706–662 and in *Huelsman*, that the imposition of the extended term is "necessary

for the protection of the public." The standard of review of pre-HPC sentences under Act 188 is identical. *To find that a pre-HPC sentence remains fair although it exceeds the HPC sentence, the reviewing court should find that commitment for the term of the original sentence is necessary for protection of the public.*

*In determining whether the original sentence continues to be fair, the reviewing court should take into account the legislative rationale in providing a lesser penalty for the same offense, the circumstances of the pre-HPC offense and the grounds upon which the sentencing court imposed the original sentence. The manner in which the offense was committed, the extensive criminal history of the defendant prior to sentence and his demonstrated propensity to commit crimes may also be relevant to the question whether the old sentence continues to be fair.* In incorporating the policies of § 706–662, however, Act 188 does not incorporate the criteria which must be applied under the HPC to determine whether the particular offender is in a category of offenders who are subject to extended term sentencing. That question is answered by Act 188 as to any offender serving a pre-HPC sentence.

(Emphases added.) Indeed, the sentencing standard announced in *Ortez*, requires "that the court [give appropriate consideration] to the history, character and condition of [the defendant], including his post-sentence conduct and present condition, in arriving at its decision." *Id.* at 113, 588 P.2d at 903 (brackets added).

 Here, the circuit court based its denial of Guillermo's motion for resentencing on the following facts:

a. The Defendant committed offenses and was adjudicated as young as fifteen (15) years of age.

b. The Defendant was committed to the Koolau Training school in 1951.

c. Even after being granted the privilege of parole for his Rape conviction, for which he received a life imprisonment, he was arrested and convicted under Criminal Number 91–0910.

It affirmatively appears from this bare record that the circuit court failed to consider: (1) whether the commitment for the term of the original sentence is necessary for protection of the public; (2) the legislative rationale in providing a lesser penalty for the same offense; (3) the circumstances of the pre-HPC offense; (4) the grounds upon which the sentencing court imposed the original sentence; (5) the manner in which the offense was committed; and (6) the present condition of the defendant. Accordingly, the circuit court failed to enter sufficient findings of fact under *Ortez*. *Cf. State v. Lau*, 73 Haw. 259, 263, 831 P.2d 523, 525 (1992) ("Although there is no requirement for the sentencing court to state its reasons for imposing sentence, we have urged and strongly recommended that the sentencing court do so[.]" (citations omitted)). Therefore, we hold that the circuit court abused its discretion in denying Guillermo's motion for resentencing.

## IV. CONCLUSION

Because Guillermo falls within the purview of Act 188 and because the circuit court failed to enter sufficient findings of fact, we vacate the June 19, 1998 order denying Guillermo's motion for resentencing and remand the matter to the circuit court for the entry of new findings of fact and conclusions of law. In its discretion, the circuit court may conduct a new hearing.