KELLY, J.
odissenting). I concur with Justice CAVANAGH’s dissent. I write this opinion to point out that the majority’s interpretation creates an absurd result, one that the Court should not permit. It is absurd to conclude that the Legislature intended to jettison no-fault claims of children and mentally impaired persons.
I agree also with Justices MArkmAN, WEAVER, and CAVANAGH that the “absurd results” rule is an important part of Michigan jurisprudence and should be reinstated. Four justices believe that the absurd results rule is valid and can be used in assessing a case. The accuracy of this statement is unaffected by the fact that *110 only two of them have found an absurd result to have been reached by the majority in this case. People v McIntire[1] should be overturned.
ABSURD RESULTS
The principle that statutes should be construed to avoid absurd results that are manifestly inconsistent with legislative intent is not a new or radical innovation. On the contrary, it was well-established in the jurisprudence of the United States Supreme Court before the twentieth century. In Church of the Holy Trinity v United States,[2] the Court unanimously stated:
It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.
Likewise, more recent case law of the United States Supreme Court recognizes that situations exist when it is appropriate to depart from a strictly literal interpretation of statutory language to further legislative intent. For example, in Lewis v United States,[3] the Court considered an issue of statutory interpretation involving the federal Assimilative Crimes Act. As the Court *111 explained, the basic purpose of this act is to “borrowG” state law to fill in gaps in federal criminal law applicable to conduct on federal enclaves. Id. at 160.
By its literal language, the federal act applies to a defendant’s acts or omissions that are not made punishable by “any enactment” of Congress. Id. at 159. However, the Court declined to apply the act literally, stating that doing so would not be a “sensible interpretation” because a literal reading of the words “any enactment” would “dramatically separate the statute from its intended purpose.” Id. at 160.[4]
THE ABSURD RESULTS EXCEPTION TO THE PLAIN LANGUAGE DOCTRINE IN MICHIGAN
The absurd results exception to the plain language doctrine has a long history in Michigan jurisprudence. From 1844 until 1999, this state relied on and regularly used the rule to interpret statutory language that led to absurd results.
In Alvord v Lent,[5] Justices GRAVES, CAMPBELL, and COOLEY held that “[i]f [statutory] construction would produce great inconvenience, if it would lead to absurd or mischievous results, if it would tend to embarrass the course of justice and serve to defeat necessary legal remedies, it ought not to be adopted unless required by some positive rule of law, and we are not aware of any such rule.” Id. at 372. This holding by some of the most highly regarded justices of this Court continued the application of the absurd results rule that became part *112 of Michigan law as early as 1844. See Green v Graves, 1 Doug 351, 354 (Mich, 1844).
The holding in Alvord continued a trend that lasted until 1999. Fourteen years after its decision in Alvord, this Court again heard a case raising an absurd results issue. In Cummings v Corey,[6] the Court followed the holding in Alvord, thus cementing the use of the rule in Michigan. Again, in 1904, the Court cited and followed Alvord. See In re Lambrecht, 137 Mich 450; 100 NW 606 (1904).
The trend did not end there, and, in fact, the Court has affirmed the application of the absurd results exception repeatedly during the last century. Cases in the 1910s,[7] 1920s,[8] 1930s,[9] 1940s,[10] 1950s,[11] 1960s,[12] 1970s,[13] 1980s,[14] and 1990s[15] show its continual use. It was only in 1999 that this Court, in People v Mclntire, overruled this longstanding part of Michigan law.
In Mclntire, the Court gave no legal justification for not following Michigan precedent. Instead, it quoted Justice Antonin Scalia stating, “ ‘[We] agree with Jus *113 tice Scalia’s description of such attempts to divine unexpressed and nontextual legislative intent as “nothing but an invitation to judicial lawmaking.” ’ ” McIntire, supra at 156 n 2, quoting 232 Mich App 71, 122 n 2 (1998) (YOUNG, J., concurring in part and dissenting in part), quoting Scalia, A Matter of Interpretation: Federal Courts and the Law (New Jersey: Princeton University Press, 1997), p 21.
Justice Scalia’s opinion on the absurd results rule, while perhaps interesting, is not and was not binding on Michigan. Nonetheless, the Court adopted it, and Mclntire caused a ripple in Michigan law that was not clearly apparent at the time it was decided. However, Mclntire’s effect is now very clear. The damage that it has done and continues to do should be stemmed, and Michigan jurisprudence should he put back on the correct track.[16]
PRESUMPTIVE UNDERSTANDING OF THE FRAMERS OF THE MICHIGAN CONSTITUTION
A reasonable person must presume that the drafters and ratifiers of our state constitution expected Michigan courts to apply the absurd results rule of construction to Michigan statutes. This is because it was well-established by 1963 that courts should construe statutes to avoid absurd results and at times should depart from a strictly literal application of statutory language. Also, the Michigan Constitution includes no language disapproving this principle. Accordingly, the Court’s earlier approval of the principle was consistent with the original intent of the drafters of the state constitution.
*114 Notably, in 1976, a time much closer to the adoption of the current Michigan Constitution than the present, this Court, in a majority opinion joined by six justices, stated: “[It is a] fundamental rule of statutory construction that departure from the literal construction of a statute is justified when such construction would produce an absurd and unjust result and would be clearly inconsistent with the purposes and policies of the act in question.” Salas v Clements, 399 Mich 103, 109; 247 NW2d 889 (1976).
THE NEARLY UNIVERSAL RECOGNITION OF THE ABSURD RESULTS RULE OF CONSTRUCTION IN AMERICAN STATES
A review of the case law of our sister states reflects the wide extent to which Michigan has departed from traditional norms of statutory construction. The Arizona Supreme Court has aptly summarized the traditional approach to applying statutory language in American law. It has emphasized that a court should look first to the words of the statute and apply its language if it is unambiguous. But, the Arizona court has counseled, other clear indicators of legislative intent can require a departure from the literal meaning of statutory language that seems unambiguous on its face:
The primary rule of statutory construction is to find and give effect to legislative intent. We look first to the statute’s words. Words have their ordinary meaning unless the context of the statute requires otherwise. Where language is unambiguous, it is normally conclusive, absent a clearly expressed legislative intent to the contrary. [Mail Boxes Etc, USA v Industrial Comm of Arizona, 181 Ariz 119, 121; 888 P2d 777 (1995) (citation omitted).]
In addition, prevailing case law from the highest courts of many diverse American states recognizes that courts must construe statutes to avoid absurd results or to further legislative intent. This must occur even if it requires the courts to adopt a construction that departs *115 from a strictly literal reading of statutory language. The states are: Alabama,[17] Alaska,[18] Arkansas,[19] California,[20] Colorado,[21] Delaware,[22] Florida,[23] Hawaii,[24] Idaho,[25] Illin *116 ois,[26] Indiana,[27] Louisiana,[28] Maine,[29] Massachusetts,[30] Minnesota,[31] Missouri,[32] Montana,[33] Nebraska,[34] Nev *117 ada,[35] New Hampshire,[36] New Jersey,[37] New Mexico,[38] New York,[39] North Carolina,[40] North Dakota,[41] Ohio,[42] *118 Oklahoma,[43] Rhode Island,[44] South Carolina,[45] South Dakota,[46] Tennessee,[47] Texas,[48] Utah,[49]Vermont,[50] *119 Virginia,[51] Washington,[52] West Virginia,[53] Wisconsin,[54] and Wyoming.[55]
The Iowa Supreme Court has strongly suggested that it would depart from a literal application of statutory language to avoid an absurd result. It stated that it presumes that the legislature intends a reasonable and just result and accordingly “interprets statutes so as to avoid absurd results.” State v Iowa Dist Court for Black Hawk Co, 616 NW2d 575, 578 (Iowa, 2000). Similarly, *120 the Oregon Supreme Court has noted that “a statute should not be construed ‘so as to ascribe to the legislature the intent to produce an unreasonable or absurd result.’ ” State v Galligan, 312 Or 35, 39; 816 P2d 601 (1991), quoting State v Linthwaite, 295 Or 162, 170; 665 P2d 863 (1983). Likewise, the Kentucky Supreme Court has stated that “[t]he words of the statute are to be given their plain meaning unless to do so would constitute an absurd result.” Executive Branch Ethics Comm v Stephens, 92 SW3d 69, 73 (Ky, 2002).
Interestingly, it appears that the Pennsylvania courts are statutorily bound to construe statutes to avoid absurd results. Hence, they are required to depart from a literal application of a statute that would create am absurd result. See In re Nomination Papers of Lahr, 577 Pa 1, 7; 842 A2d 327 (2004), citing 1 Pa Cons Stat 1922(1) (noting that the state Statutory Construction Act requires the courts to “ ‘presume that the General Assembly did not intend a result that is absurd or unreasonable’ ”) (citation omitted).
The Georgia Supreme Court has also demonstrated that it recognizes an absurd results exception to applying “clear” statutory language by stating that, as long as statutory language “is clear and does not lead to an unreasonable or absurd result, ‘it is the sole evidence of the ultimate legislative intent.’ ” Ray v Barber, 273 Ga 856; 548 SE2d 283 (2001), quoting Caminetti v United States, 242 US 470, 490; 37 S Ct 192; 61 L Ed 442 (1917).
The Connecticut Supreme Court also clearly rejects an approach to statutory construction that would always apply the literal meaning of a statute in the following thoughtful explanation of its approach to statutory construction:
*121 In construing the workers’ compensation statutes at issue, we follow the method of statutory interpretation recently articulated in State v. Courchesne, 262 Conn. 537 [577-578], 816 A.2d 562 (2003). “The process of statutory interpretation involves a reasoned search for the intention of the legislature. ... In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.... Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.
“In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.” [Hatt v Burlington Coat Factory, 263 Conn 279, 290; 819 A2d 260 (2003).]
In a similar vein, the Kansas Supreme Court has stated that “ ‘[i]n determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested.’ ” *122 State v Barnes, 275 Kan 364, 375; 64 P3d 405 (2003), quoting State v Le, 260 Kan 845, 849; 926 P2d 638 (1996).
The Maryland Court of Appeals has likewise made clear that it does not regard issues of statutory interpretation always to be controlled by the literal meaning of a statute:
[W]hen there is some question as to whether a literal interpretation of the language used in the statute really would be consistent with the purpose of the legislation, we may look beyond that literal meaning. In such a circumstance, “the court, in seeking to ascertain legislative intent, may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.” [Brown v State, 359 Md 180, 189; 753 A2d 84 (2000), quoting Kaczorowski v Mayor of Baltimore, 309 MD 505, 513; 525 A2d 628 (1987).]
From this discussion, it strongly appears that 48 of the 50 American states adhere to the traditional principle that a court should construe a statute to avoid absurd results. They agree that courts should not follow a rigidly literal approach to statutory construction that is inconsistent with legislative intent.
The remaining state, aside from Michigan, is Mississippi. It appears that Mississippi might not allow a departure from a literal application of a statute even to avoid absurd results or to further legislative intent. My research has found no Mississippi precedent clearly recognizing the traditional absurd results rule of construction, and the Mississippi Supreme Court has stated that if a statute “ ‘is plain and unambiguous there is no room for construction....’” 32 Pit Bulldogs & Other Prop v Prentiss Co, 808 So 2d 971, *123 973-974 (Miss, 2002), quoting Clark v State ex rel Mississippi State Med Ass’n, 381 So 2d 1046, 1048 (Miss, 1980).
Hence, American jurisdictions overwhelming adhere to the historic principle that statutes should be construed to avoid absurd results even if it means departing from a literal interpretation. This fact certainly calls into question the recent jurisprudence of the Michigan Supreme Court that departs from the state’s decades-long position in the mainstream of American jurisprudence on this matter.
A CRITIQUE OF JUSTICE SCALIA’S “TEXTUALISM”
A rigidly literalist approach that applies the plain language of a statute is drastically at odds with the approach that the United States Supreme Court employs in interpreting federal statutes.[56] It is also at odds with the overwhelming majority of American states. Hence, it is curious that recent case law from this Court has departed from the traditional approach of American courts to statutory construction.
It appears that the cause of the change in perspective by this Court is rooted in the personal views of Associate Justice Antonin Sealia of the United States Supreme Court. In Mclntire, the Michigan Supreme Court adopted as its own the Court of Appeals dissent in that *124 case written by a Michigan Supreme Court justice while he was a member of that Court. In doing so, the Supreme Court rejected the earlier statement of the Court in Salas v Celements, supra at 109, that “departure from the literal construction of a statute is justified when such construction would produce an absurd and unjust result and would be clearly inconsistent with the purposes and polices of the act in question.” See McIntire, supra at 156 n 2.
The stated rationale for rejecting Salas was the majority’s agreement with Justice Scalia’s disdainful treatment of the rule as an attempt “ ‘to divine unexpressed and nontextual legislative intent....’” Id., citing Scalia, A Matter of Interpretation: Federal Courts and the Law (New Jersey: Princeton University Press, 1997), p 21. The Court quoted Justice Scalia as opining that such attempts were “ ‘ “nothing but an invitation to judicial lawmaking.” ’ ” Mclntire, supra at 156 n 2. But the Court offered no explanation why the personal views of Justice Scalia should have prevailed over established Michigan jurisprudence with regard to construing a statute to avoid an absurd result. Neither was consideration given to the principle of stare decisis, which is respect for established precedent.[57]
A brief review of Justice Scalia’s book reveals that his views are marked by internal inconsistencies. Justice Scalia’s main thesis with regard to statutory construction is that “[t]he text is the law, and it is the text that must be observed.” Scalia, supra at 22. He asserts that what the legislature meant as opposed to what it *125 actually stated in the language of a statute is immaterial. Id. at 22-23. However, Justice Scalia acknowledges that one of the “sound principles of interpretation” is the interpretative doctrine of lapsus linguae (slip of the tongue) or “scrivener’s error,” where from the very face of the statute “it is clear to the reader that a mistake of expression (rather than of legislative wisdom) has been made.” Id. at 20.
As an example, Justice Scalia refers to a statute stating “defendant” when only “criminal defendant” makes sense. Id. I agree that the scrivener’s error canon of construction is an appropriate tool in determining legislative intent. But intellectual honesty requires an acknowledgement that it involves a departure from the actual language used by the Legislature or by Congress.
In a similar vein, Justice Scalia defends the use of traditional canons of construction that he states are often associated with textualism, including the canons expressio unius est exclusio alterius (expression of one thing implies exclusion of others) and ejusdem generis (limiting general language to items of the same sort as contemplated by specific language). Id. at 25-27. I certainly believe that traditional canons of construction such as these are not only appropriate, but are often extremely helpful tools in ascertaining legislative intent.
However, it must be acknowledged that they are not typically required by the statutory text itself. Rather, it may be fairly understood that the Legislature expects and intends the judiciary to employ well-established canons of construction in construing statutes. Thus, it cannot reasonably be concluded that using the canons of construction accords with a rigid adherence to applying the text of a law without regard to actual legislative intent.
*126 These contradictions in Justice Scalia’s judicial philosophy reflect an internal inconsistency seemingly endemic to rigid textualism. As a thoughtful commentator has stated:
While textualists generally avoid legislative history, they freely consult assorted dictionaries, make use of various linguistic arguments without benefit of linguistic study, and selectively employ canons of statutory interpretation in their textual analyses. The advocates of plain meaning textualism do so without the benefit of any principled methodology justifying these extra-statutory tools. [Cavanaugh, Order in multiplicity: Aristotle on text, context, and the rule of law, 79 NC L R 577, 595-596 (2001).]
Justice Scalia also acknowledges that the principle that a judge’s objective in interpreting a statute is to give effect to the intent of the Legislature “goes back at least as far as Blackstone.” Scalia, supra at 16 n 15, citing 1 Blackstone, Commentaries on the Laws of England 59-62, 91 (1765). Hence, the principle that courts may depart from a literal interpretation of a statute to effect legislative intent was a recognized facet of the law before our nation was founded.
Accordingly, departure from this historic principle is a remarkably activist position. Indeed, as one commentator has noted, Justice Scalia’s views on statutory construction expressed in A Matter of Interpretation are extreme. Justice Scalia compares judges who use traditional guides to statutory construction to ascertain legislative intent (other than a rigid adherence to the “plain language” of the statute) to the despotic Roman Emperor Nero.[58]
*127 In essence, Justice Scalia and his adherents place their idiosyncratic views on statutory construction above adherence to traditional norms of American jurisprudence. Of course, many aspects of the law must develop over time. Accordingly, it is appropriate occasionally, for example, for courts to alter common-law principles in light of new social realities. However, this is worlds apart from abolishing a bedrock principle of statutory construction such as the rule that a statute should be construed to avoid absurd results inconsistent with legislative intent.
It is also worthy to note, as does Justice MARKMAN, that Justice Scalia himself has at certain times embraced the absurd results rule. See K mart Corp v Cartier, Inc, 486 US 281, 324 n 2; 108 S Ct 1811; 100 L Ed 2d 313 (1988) (Scalia, J., concurring in part and dissenting in part). This fact further strengthens my position that this Court should not continue to follow Mclntire, which rejected the rule.
APPLICATION OF THE ABSURD RESULTS RULE TO THIS CASE
I now return to the case on appeal. The minority saving provision is found in MCL 600.5851(1) of the Revised Judicature Act (RJA). It provides that a person is entitled to defer bringing an action if the person was *128 under 18 years of age or insane at the time the claim accrued. The person, or someone making a claim for the person, has one year after the disability is removed to bring the action, even if the statutory period of limitations has run. The obvious intent of this section of the RJA is to provide minors and the insane with time to bring a cause of action once they are legally capable of bringing it.
MCL 500.3145(1) is the no-fault act’s statute of limitations and tolling provision.[59] As Justice WEAVER explains, the one-year-back rule is part of the no-fault act’s tolling provision and is not applicable in this case. But the majority insists that we apply it, thereby creating a situation in which injured children and the insane may likely be robbed of the benefit of their causes of action. The ruling assumes that the Legislature intended to grant minors and insane persons a hollow right to bring a no-fault action. It is patently preposterous that any sane legislator intended the law to be construed as it has been construed by the majority in this case. The result reached is absurd.
As this Court has stated on numerous occasions, a result is absurd where it is clearly inconsistent with the *129 purposes and policies of the act in question. Salas, supra at 109. See Attorney General v Detroit U R Co, 210 Mich 227, 254; 177 NW 726 (1920) (citation omitted) (“ ‘Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment,... a construction may be put upon it which modifies the meaning of the words, and even the structure of the sentence.’ ”). I have no serious question but that the result reached by the majority in this case is inconsistent with the intent of the minority/insanity saving provision. It is a manifest contradiction of the apparent purpose of the saving clause, which is to help prevent children and the insane from losing their rightful legal claims.[60]
The intent behind the provision is to provide minors and the insane time to bring an action for injuries they suffered while they were unable to bring it for themselves. Nothing in the statute signals that the Legislature intended to provide such people something less than a complete cause of action. It is inconceivable that the Legislature had a good reason to create a vehicle whereby disadvantaged people could sue later but would have little or no monetary recovery.
For example, assume a nine-year-old boy was injured in an automobile accident and needed seven years to recover. If he brought suit the day he turned 18 and prevailed, he would recover nothing, because he recovered from the accident two years before. Had the Legislature actually intended to treat this person in this *130 way, it would have made it clear. No reasonable legislator would expect the Court to assume such a perverse intent.
Justice MARKMAN suggests that there is no absurd result here because there are “reasonable” reasons why a legislator might have wanted the outcome provided by the majority. The reader can judge for him- or herself whether a legislator would have embraced any of the imagined reasons Justice MARKMAN and Chief Justice Taylor offer.[61]
CONCLUSION
The result that the majority reaches in this case is absurd. It is inconceivable that the Legislature intended to create a hollow cause of action for some of our most helpless and powerless citizens.
I believe that the Court should reject Mclntire’s treatment of the absurd results rule. We should reinstate the rule in Michigan and apply it in this case. The idea that the rule is outside of this Court’s constitutional authority is indefensible. Throughout all our various constitutions, the people of this state have given this Court its power knowing that, included in it, is the ability to construe statutes to avoid absurd results.
The spirit of the law should control. The absurd results rule should be applied to this case. Since it has not been applied, the result is unjust, absurd, and manifestly contrary to public policy.
CAVANAGH, J., concurred with KELLY, J.

 461 Mich 147; 599 NW2d 102 (1999).

 143 US 457, 459; 12 S Ct 511; 36 L Ed 226 (1892).

 523 US 155; 118 S Ct 1135; 140 L Ed 2d 271 (1998).

 The Court recognized that an absurd result would he caused by a literal interpretation of the act. It indicated that if the act were read literally, a state law against murder might not be able to be assimilated under the act. This could occur because of the existence of a federal law against assault. Id. at 161.

 23 Mich 369 (1871).

 58 Mich 494; 25 NW 481 (1885).

 See People v Schoenberg, 161 Mich 88; 125 NW 779 (1910).

 See Attorney General v Detroit U R Co, 210 Mich 227; 177 NW 726 (1920).

 See Garwols v Bankers Trust Co, 251 Mich 420, 427-428; 232 NW 239 (1930), quoting Holy Trinity, supra at 459.

 See Webster v Rotary Electric Steel Co, 321 Mich 526; 33 NW2d 69 (1948).

 See State Hwy Comm’r v Detroit City Controller, 331 Mich 337; 49 NW2d 318 (1951).

 See People v Bailey, 10 Mich App 636; 160 NW2d 380 (1968).

 See Franges v Gen Motors Corp, 404 Mich 590; 274 NW2d 392 (1979).

 See Michigan Humane Society v Natural Resources Comm, 158 Mich App 393; 404 NW2d 757 (1987).

 See Karpinski v St John Hosp-Macomb Ctr Corp, 238 Mich App 539; 606 NW2d 45 (1999).

 Recently in Costa v Community Emergency Med Services, Inc, 475 Mich 403; 716 NW2d 236 (2006), the Court called into question the continuing relevance of Mclntire in Michigan by using an absurd-results-type analysis in reaching its decision.

 See Ex parte Watley, 708 So 2d 890, 893 (Ala, 1997), quoting Singer, Sutherland Statutory Construction (5th ed), § 45.11, p 61 (stating that it is “ ‘fundamental’ ” that “ ‘departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question’ ”).

 See Brooks Range Exploration Co, Inc v Gordon, 46 P3d 942, 945-946 (Alas, 2002) (“[Wjhere the literal interpretation of a statute would lead to absurd results, courts can interpret the words of the statute to agree with the intention of the legislature.”).

 See Madden v Aldrich, 346 Ark 405, 412-413; 58 SW3d 342 (2001) (“[Sjtatutes will not be given a literal interpretation if it leads to absurd consequences that are clearly contrary to legislative intent.”).

 See In re JW, 29 Cal 4th 200, 210; 126 Cal Rptr 2d 897; 57 P3d 363 (2002) (“[W]e have often said that courts will not give statutory language a literal meaning if doing so would result in absurd consequences that the Legislature could not have intended.”).

 See Colorado Dep’t of Corrections v Nieto, 993 P2d 493, 501 (Colo, 2000), quoting AviComm, Inc v Colorado Pub Utilities Comm, 955 P2d 1023, 1031 (Colo, 1998) (“ ‘[T]he intention of the legislature will prevail over a literal interpretation of the statute that leads to an absurd result.’ ”).

 See Director of Revenue v CNA Holdings, Inc, 818 A2d 953, 957 (Del, 2003), quoting Newtowne Village Service Corp v Newtowne Rd Dev Co, Inc, 772 A2d 172, 175 (Del, 2001) (indicating that ambiguity in a statute allows for judicial interpretation “ ‘if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature’ ”).

 See Joshua v Gainesville, 768 So 2d 432, 435 (Pla, 2000), quoting Las Olas Tower Co v Fort Lauderdale, 742 So 2d 308, 312 (Fla Dist App, 1999) (stating that a rule of statutory construction is that “ ‘a literal interpretation need not be given the language used when to do so would lead to an unreasonable conclusion or defeat legislative intent or result in a manifest incongruity’ ”).

 See State v Guillermo, 91 Hawaii 307, 316; 983 P2d 819 (1999) (stating that the court may depart from a plain reading of a statute where a literal interpretation would lead to absurd or unjust results).

 See Driver v SI Corp, 139 Idaho 423, 427; 80 P3d 1024 (2003) (“The plain meaning of a statute therefore will prevail unless clearly expressed *116 legislative intent is contrary or unless plain meaning leads to absurd results.”).

 See In re DF, 208 Ill 2d 223, 230; 802 NE2d 800 (2003) (declining to apply a “plain language or literal reading” of the statutory provision at issue with reference to the principle that a court “is not bound by the literal language of a statute that produces a result inconsistent with clearly expressed legislative intent, or that yields absurd or unjust consequences not contemplated by the legislature”).

 See State v Duggan, 793 NE2d 1034, 1038 (Ind, 2003) (explaining that in examining a statute, “it is often necessary to avoid excessive reliance on a strict literal meaning” and that the legislature “is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result”).

 See Metro Riverboat Assoc, Inc v Louisiana Gaming Control Bd, 797 So 2d 656, 662 (La, 2001) (construing statute “to avoid the potential constitutional questions raised by a literal interpretation” and “to avoid the absurd results that would result from such a reading”).

 See Guiggey v Great Northern Paper, Inc, 704 A2d 375, 377 (Me, 1997) (noting that statutory interpretation is controlled by a statute’s plain meaning unless the plain meaning leads to absurd results).

 See Commonwealth v Wallace, 431 Mass 705, 708; 730 NE2d 275 (2000), quoting Lexington v Town of Bedford, 378 Mass 562, 570; 393 NE2d 321 (1979) (“ ‘A literal construction of statutory language will not be adopted when such a construction will lead to an absurd and unreasonable conclusion....’”).

 See Mutual Service Cas Ins Co v League of Minnesota Cities Ins Trust, 659 NW2d 755, 762 (Minn, 2003) (recognizing that the court may “disregard the plain language of a statute only where the legislative purpose was clear and the plain meaning would utterly confound that purpose”).

 See Lewis v Gibbons, 80 SW3d 461, 465-466 (Mo, 2002) (stating that statutory construction “is not to be hyper-technical” and declining to apply an interpretation of statutory language that it found to be “inconsistent with the intention of the legislature, unreasonable and absurd”).

 See Hiett v Missoula Co Pub Schools, 317 Mont 95, 104; 75 P3d 341 (2003), quoting State v Price, 310 Mont 320, 326; 50 P3d 530 (2002) (noting that the court must “ ‘construe each statute so as to avoid an absurd result’ ”).

 See Premium Farms v Holt Co, 263 Neb 415, 423-424; 640 NW2d 633 (2002) (stating that “we are guided by the presumption that the Legislature intended a sensible, rather than an absurd, result in enacting the *117 statute” and declining to apply a plain reading of a statutory provision because it did not lead to a “sensible result”).

 See Pellegrini v State, 117 Nev 860, 873-874; 34 P3d 519 (2001) (setting forth principles that “words in a statute will generally be given their plain meaning, unless such a reading violates the spirit of the act” and that “we must construe statutory language to avoid absurd or unreasonable results”).

 See Simpson v Young, 153 NH 471, 479; 899 A2d 216 (2006) (“We enforce the statute as written, unless it leads to an absurd result, and leave policy decisions to the legislature.”)

 See Hubbard v Reed, 168 NJ 387, 392; 774 A2d 495 (2001), quoting Turner v First Union Nat’l Bank, 162 NJ 75, 84; 740 A2d 1081 (1999) (“ ‘[Where a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control.”).

 See State v Davis, 134 NM 172, 175; 74 P3d 1064 (2003) (stating that if “adherence to the literal use of the words would lead to injustice, absurdity or contradiction,” then “the statute is to be construed according to its obvious spirit or reason”).

 See Desiderio v Ochs, 100 NY2d 159, 172; 761 NYS2d 576; 791 NE2d 941 (2003) (“Our well-established rules of statutory construction prevent us from looking behind the unambiguous language of a statute unless an absurd result would obtain from its application.”) (citation omitted).

 See Frye Regional Med Ctr, Inc v Hunt, 350 NC 39, 45; 510 SE2d 159 (1999), quoting Mazda Motors of America, Inc v Southwestern Motors, Inc, 296 NC 357, 361; 250 SE2d 250 (1979), quoting State v Barksdale, 181 NC 621, 625; 107 SE 505 (1921) (“ ‘ “[Wjhere a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.” ’ ”).

 See Shiek v North Dakota Workers Compensation Bureau, 634 NW2d 493, 499 (ND, 2001) (“[I]f adherence to the strict letter of the statute would lead to an absurd or ludicrous result, a court may resort to extrinsic aids, such as legislative history, to interpret the statute.”).

 See Hubbard v Canton City School Bd of Ed, 97 Ohio St 3d 451, 453; 780 NE2d 543 (2002) (“Courts give words in a statute their plain and ordinary meaning unless legislative intent indicates a different meaning.”).

 See Bishop v Takata Corp, 12 P3d 459, 466 n 30 (Okla, 2000) (“The plain meaning of statutory language is conclusive except in the rare case in which literal construction will produce a result demonstrably at odds with the intention of the Legislature.”).

 See Park v Ford Motor Co, 844 A2d 687, 692 (RI, 2004), quoting Providence Journal Co v Rodgers, 711 A2d 1131, 1134 (RI, 1998) (“We do not ‘ “interpret a legislative enactment literally when to do so would provide a result at odds with its legislative intent.” ’ ”).

 See Hodges v Rainey, 341 SC 79, 91; 533 SE2d 578 (2000), quoting Ray Bell Constr Co, Inc v Greenville Co School Dist, 331 SC 19, 26; 501 SE2d 725 (1998) (courts will reject ordinary meaning of statutory language, “[h] owe ver plain,” if “to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature or would defeat the plain legislative intention”).

 See Slama v Landmann Jungman Hosp, 654 NW2d 826, 828 (SD, 2002), quoting In re Petition of Famous Brands, Inc, 347 NW2d 882, 885 (SD, 1984) (“ ‘[RJesorting to legislative history is justified only when legislation is ambiguous, or its literal meaning is absurd or unreasonable.’ ”).

 See Heirs of Ellis v Estate of Ellis, 71 SW3d 705, 712 (Tenn, 2002), quoting Tennessee Title Co v First Fed S & L Ass’n, 185 Tenn 145, 154; 203 SW2d 697 (1947) (“[W]here the ‘carrying out of the legislative intention, which is the prime and sole object of all rules of construction, can only be accomplished by departure from the literal interpretation of the language employed,’ then the legislative intent should be applied over ‘the literal import of the words.’ ”).

 See Helena Chemical Co v Wilkins, 47 SW3d 486, 493 (Tex, 2001) (stating that “[e]ven when a statute is not ambiguous on its face, we can consider other factors to determine the Legislature’s intent” and articulating various factors, including the circumstances of the statute’s enactment and the legislative history).

 See Jackson v Mateus, 70 P3d 78, 83 (Utah, 2003), quoting Millett v Clark Clinic Corp, 609 P2d 934, 936 (Utah, 1980) (stating that “[a]n ordinance should be applied according to its literal wording, unless such a reading is unreasonable, confused, inoperable, or in blatant contravention of the express purpose of the statute” and that “ ‘statutory enactments are to be so construed as to render all parts thereof relevant and meaningful, and interpretations are to be avoided which render some part of a provision nonsensical or absurd.’ ”).

 See Town of Killington v State, 172 Vt 182, 189; 776 A2d 395 (2001) (“When the plain meaning of statutory language appears to undermine *119 the purpose of the statute, we are not confined to a literal interpretation ....”). See also Judicial Watch, Inc v State, 2005 Vt 108, *16; 892 A2d 191, 199 (2005) (standing for the proposition that the absurd results doctrine “does not, however, provide a license to substitute this Court’s policy judgments for those of the Legislature” and that it “ ‘should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said’ ”), quoting 2A Singer, Sutherland’s Statutes and Statutory Construction (6th ed), § 46.07, p 199.

 See Shelor Motor Co Inc v Miller, 261 Va 473, 479; 544 SE2d 345 (2001) (“We must determine the intent of the General Assembly from the words contained in the statute, unless a literal construction of the statute would yield an absurd result.”).

 See Fraternal Order of Eagles v Grand Aerie of Fraternal Order of Eagles, 148 Wash 2d 224, 239; 59 P3d 655 (2002) (stating that the court “will avoid literal reading of a statute which would result in unlikely, absurd, or strained consequences”).

 See Taylor-Hurley v Mingo Co Bd of Ed, 209 W Va 780, 787; 551 SE2d 702 (2001), quoting State ex rel Frazier v Meadows, 193 W Va 20, 24; 454 SE2d 65 (1944) (stating a recognition of the need to depart from statutory language “ ‘in exceptional circumstances’ ” and, accordingly, that courts “ ‘may venture beyond the plain meaning of a statute in the rare instances in which there is a clearly expressed legislative intent to the contrary’ ” or “ ‘in which a literal application would defeat or thwart the statutory purpose’ ”).

 See Hamilton v Hamilton, 261 Wis 2d 458, 478; 661 NW2d 832 (2003) (noting that “[o]ne of the few exceptions” to the principle that plain and unambiguous statutory language is applied without farther analysis is “that the court will seek to avoid a truly absurd or unreasonable result”).

 See Abeyta v State, 42 P3d 1009, 1012 (Wy, 2002) (stating that the court will not construe a statute in a way that “produces an absurd result”).

 This distinction between federal case law and currently prevailing Michigan case law regarding statutory construction is important for Michigan courts at all levels to hear in mind. Holdings of the Michigan Supreme Court require lower Michigan courts to generally adhere to a rigidly literal application of the language of Michigan statutes even if this produces absurd results. However, there are decisions of the United States Supreme Court indicating that it is appropriate to depart from a literal interpretation to avoid absurd results or to further congressional intent. It is axiomatic that these decisions apply when Michigan courts are called on to interpret federal statutes, as sometimes happens.

 I realize that I signed the opinion in Mclntire. I have since recognized my mistake and have rejected the views on statutory construction expressed in that opinion. See Halloran v Bahn, 470 Mich 572, 588; 683 NW2d 129 (2004) (Kelly, J., dissenting); Koontz v Ameritech Services, Inc, 466 Mich 304, 326; 645 NW2d 34 (2002) (Kelly, J., dissenting); People v Clemens, 462 Mich 864, 865 (2000) (Kelly, J., dissenting).

 See Cavanaugh, supra at 593 n 50 (referring to the relevant language in Scalia’s hook and noting that “[i]t is important to recognize that for Justice Scalia there appears no distinction between interpretation by judges (elected or not) and the edicts of tyrants”). In the referenced *127 portion of Justice Scalia’s work, he refers to judicial construction of statutes informed by concern for actual legislative intent as “one step worse than the trick the Emperor Nero was said to engage in: posting edicts high up on the pillars, so that they could not easily be read.” Scalia, supra at 17. Of course, this extreme position does not meaningfully acknowledge that judicial construction of a statute is typically concerned with the details of its application. It differs greatly from imposing an edict in an area in which a citizen would have no reasonable basis for expecting a court decision. Also, constitutional protections can prevent statutes from being interpreted or applied in a way that imposes unforeseen harms on parties.

 Section 3145(1) of the no-fault act provides:
An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor’s loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. [Emphasis added.]

 I do not advance here a personal policy judgment, as Justice Markman insists. The saving clause was a policy judgment of the Legislature. I do not, as he asserts, define an “absurd result” as one that is “imperfect or flawed” or “less ‘consistent’ and less ‘effective’ than it could have been.” Ante at 85. My definition of “absurd result” is one given by this Court.

 What legislator would find it reasonable to reduce the cost of insurance by leaving children and the insane with little or no recovery for their injuries? It is quite unthinkable that a legislator would intentionally vote for a bill that did that.